UNITED STATES of America,
Plaintiff-Appellee,

v.

Dennis J. DALZOTTO and Rickey C. Young, Defendants-Appellants.

Nos. 78–2210, 78–2211.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1979.

Decided Aug. 2, 1979.

Rehearing and Rehearing In Banc Denied Oct. 15, 1979.

Jon Gray Noll; Bruce A. Beeman, Springfield, Ill., for defendants-appellants.

John H. Germeraad, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before SWYGERT and TONE, Circuit Judges, and JAMESON, Senior District Judge.*

SWYGERT, Circuit Judge.

Defendants Dalzotto and Young appeal from a conviction on one count for conspiracy to distribute phencyclidine (PCP, a controlled substance). The principal issue on appeal is whether there was sufficient independent evidence of the conspiracy to support the admission of a co-conspirator's statements. The conspiracy count covered the period from September 30, 1976 through February 11, 1977. They were found not guilty on a substantive count charging distribution of PCP on February 11.

Steve Holden, an unindicted co-conspirator, testified that the three ounces of PCP which he sold to DEA Agent Carwell on September 30, 1976 had been supplied to him by defendant Dalzotto; that when Dalzotto was in jail he gave Holden the name of defendant Young as his source; that it was on the basis of that information that he dealt with Young; and that the eight ounces of PCP which he delivered to Agent Brunholtz at Springfield's Capitol Airport on February 11, 1977 had been obtained from Young. The evidence also showed several phone calls between Holden and Young beginning on February 8, and continuing through February 11; and that on February 11 Holden and Dalzotto drove to

---

* The Honorable William J. Jameson, Senior District Judge of the District of Montana, sitting by designation.

meet with Young on the side of a road, that Holden then left alone to meet Agent Brunholtz at the airport, and Dalzotto and Young left together in Young's car. Later that afternoon Holden went to the Frontier Tavern. He testified that while there he met Young who supplied him with the PCP. In his pocket at the time he was arrested was a slip of paper on which was written "Frontier Tavern, 8:00," and Young's name and phone number. Thus, Holden's testimony links Dalzotto to the September 30 sale, and Young to the February 11 sale.

■ Although conspiracy requires an agreement, this court has said that an agreement may be shown by "concert of action, all the parties working together understandingly with a single design for the accomplishment of a common purpose." *United States v. Varelli*, 407 F.2d 735, 741 (7th Cir. 1969); *cf. United States v. Mendez*, 496 F.2d 128, 130 (5th Cir. 1974). The essential question is the sufficiency of the evidence showing Dalzotto and Young "working together understandingly." Agent Carwell testified that Holden had told him Dalzotto had given him the name of his source. (Tr. 14). This is clearly hearsay unless there is sufficient independent evidence of the conspiracy to admit it as a co-conspirator's statement made during the course of the conspiracy. Fed.R.Evid. 801(d)(2)(E). It was therefore admitted with the limiting instruction that:

> What the Agent says about Mr. Holden is hearsay unless and until you are convinced beyond a reasonable doubt that there is a conspiracy between Holden and one or both Defendants. . . . If you aren't so convinced, then you cannot consider this testimony of what Holden said against either of these Defendants.

Holden testified that he was given Young's name by Dalzotto (Tr. 50–51). While this may be admissible against Dalzotto as an admission, Fed.R.Evid. 801(d)(2)(A), as to Young it is a hearsay statement unless there is independent evidence of Young's involvement in the conspiracy.

■ Co-conspirator's statements may be admitted upon a determination by the court that the Government has established, by a preponderance of independent evidence, that a conspiracy existed and the defendant was a member of that conspiracy. *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978).[1]

The only independent evidence shows that on February 11, 1977 Holden and Dalzotto met Young at the side of a road. Holden testified that he and Young got out of their cars to talk about the drug deal pending for that afternoon, (Tr. 123), while Dalzotto remained in the car. Agent Koepp, who had driven past while conducting surveillance, testified that all three got out and spoke together. (Tr. 132, 137). Dalzotto and Young then left together, while Holden went to meet with Agent Brunholtz. Thus, on February 11 there were present together at a conversation about drugs Dalzotto, who had supplied the drugs for the September 30 sale, and Young, who supplied the drugs for the sale later that day.

■ Young testified that he had known Dalzotto for nine or ten months before February, 1977, and that at Holden's request he had sought a radio for Dalzotto. Other than that, the roadside meeting, and Dalzotto's own statement implicating Young, there is no evidence in the record of any contact or connection between Dalzotto and Young. The Government introduced the records of numerous phone calls, but they are all calls between Holden and DEA agents, Holden and Dalzotto, or Holden and Young. There is no record of any calls between Young and Dalzotto. It is true that Holden called Young for the first time on February 8, 1977, and that this corresponds in time with Holden's statement to Agent Carwell that Dalzotto had given him the name of his source. This is only significant, however, insofar as it corroborates and gives substance to Holden's hearsay testimony that Dalzotto said Young was his

---

1. Application of the pre-*Santiago* standard was not reversible error. *See United States v.* *McPartlin*, 595 F.2d 1321, 1359 n.42 (7th Cir., 1979).

source. Corroboration of an inadmissible statement does not make it admissible.

The Government also suggested at oral argument that evidence of the conspiracy may be found from Holden's prior sales to Agent Carwell in Houston. Dalzotto had been Holden's immediate source, and the government argues that Young must have known that Dalzotto was buying to resell. The manifest flaw in this argument is that it assumes the conclusion it seeks to prove—that Young was Dalzotto's source. If Young was Dalzotto's source, then those sales may allow an inference that Young knew Dalzotto would resell. But the only evidence that Young *was* Dalzotto's source is Holden's hearsay testimony regarding Dalzotto's statement.

■ It is conceded that agreement may be shown by circumstantial evidence, *United States v. Mancillas*, 580 F.2d 1301 (7th Cir. 1978), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 and that once the conspiracy is established, even slight evidence may suffice to link a particular defendant to the conspiracy. *Mancillas, supra*, and *United States v. Overshon*, 494 F.2d 894 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85, 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974). Here, the argument runs that the meeting of Dalzotto and Young prior to the sale was sufficient to establish, by a preponderance, that they were jointly involved in a conspiracy.

■ Mere presence at the scene of the crime or association with conspirators or knowledge that something illegal is going on will not by themselves support a conspiracy conviction. *Mancillas, supra* ; *United States v. Quintana*, 508 F.2d 867 (7th Cir. 1975); *United States v. Baker*, 499 F.2d 845 (7th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974). Presence has been sufficient evidence of knowing participation in a conspiracy when there were suspicious circumstances, and the existence of the conspiracy was already established. *Mancillas, supra*, and *United States v. Holmes*, 452 F.2d 249 (7th Cir. 1971), *cert. denied*, 405 U.S. 1016, 92 S.Ct. 1302, 31 L.Ed.2d 479, 407 U.S. 909, 92 S.Ct. 2433, 32

L.Ed.2d 683 *reh. denied*, 409 U.S. 1002, 93 S.Ct. 305, 34 L.Ed.2d 264 (1972). Compare *Quintana, supra* and *Baker, supra.*

Two factors distinguish the case before us from those cited above. First, presence is put forward here to establish the existence of the conspiracy merely as a precondition for the admission of other evidence. For that purpose it need only be demonstrated by a preponderance of the evidence, rather than beyond a reasonable doubt. Although presence is insufficient to sustain conviction for conspiracy, it may nonetheless make participation in the conspiracy, or in this case the very existence of the conspiracy, "more likely than not." It might satisfy the civil standard, if not the criminal standard.

The second distinguishing factor is that at the least the evidence shows both Dalzotto and Young independently pursuing the same ends. This is not a case where an otherwise innocent party is implicated by his mere presence. Holden testified that he bought drugs from both of them. (The jury's finding that Dalzotto and Young were not guilty on the substantive count does not diminish the weight of this testimony. See discussion below, p. 646.)

> Most courts have been willing to find that evidence is sufficient to establish a single conspiracy where clear overlapping of membership and activities, all directed toward a common goal, is present.

*United States v. Morado*, 454 F.2d 167, 171–172 (5th Cir.), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972). Since both Dalzotto and Young were interested in distributing PCP, and used Holden as their middleman, it might be inferred that there was only one conspiracy, with overlapping membership, rather than separate conspiracies. Inferences of this sort have been more commonly drawn in large, complex conspiracies, *cf. United States v. Nasse*, 432 F.2d 1293 (7th Cir.), *cert. denied*, 401 U.S. 938, 91 S.Ct. 927, 28 L.Ed.2d 217, 402 U.S. 983, 91 S.Ct. 1657, 29 L.Ed.2d 148 (1970), but might be drawn here, too.

We need not decide if either presence, or overlapping membership is alone sufficient to satisfy the civil, preponderance, standard since we believe that Dalzotto and Young's presence together prior to the February 11 sale, and their several dealings with Holden, were cumulatively sufficient to make the existence of a conspiracy more likely than not. On the basis of such a finding the jury could properly consider Dalzotto's hearsay statement that Young was his source. Although mere referral may be insufficient to establish agreement, *United States v. Hysohion*, 448 F.2d 343 (2d Cir. 1971), the jury might have found on the basis of Dalzotto's statement that there had been an ongoing relationship in which Young sold to Dalzotto who sold to Holden. Accordingly, we find the evidence sufficient to support the conspiracy conviction.

Defendants argue that their acquittal on the substantive count of distribution on February 11 demonstrates the insufficiency of the independent evidence and precludes a preliminary finding of conspiracy. The rule is well established that "[a]cquittal on a substantive count does not bar conviction for conspiracy unless there is an identity of the proof necessary." *United States v. Isaacs*, 493 F.2d 1124, 1152 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, *reh. denied*, 418 U.S. 955, 94 S.Ct. 3234, 41 L.Ed.2d 1178 (1974). Since conviction requires proof beyond a reasonable doubt, it follows that acquittal on a substantive count does not bar a preliminary finding of conspiracy, which need only satisfy the lesser "preponderance" standard.

Young has also argued that joinder was prejudicial because evidence was introduced of his co-defendant's criminal record, because the transcriptions of phone calls introduced into evidence concerned only Dalzotto, and because Young was not directly linked to the September sales by Dalzotto. A motion for severance lies in the discretion of the trial judge, and will be reversed only for clear abuse. *United States v. McPartlin*, 595 F.2d 1321, 1333 (7th Cir. 1979). A "strong showing of prejudice" is required. *United States v.*

*Crouch*, 528 F.2d 625, 631 (7th Cir.), *cert. denied*, 429 U.S. 900, 97 S.Ct. 266, 50 L.Ed.2d 184 (1976). We find no error in the denial of severance.

We have considered the other issues raised by the defendants, and find them to be without merit.

Accordingly, the judgment appealed from is affirmed.