UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles R. MUEHLBAUER,
Defendant–Appellant.

No. 88–1156.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1989.

Decided Jan. 5, 1990.

Eric J. Klumb, R. Jeffrey Wagner, Paul Kanter, argued, Patricia J. Gorence, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Michael L. Chernin, argued, Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS and KANNE, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

The defendant, Charles R. Muehlbauer, was indicted on two counts charging him with conspiring to distribute cocaine in violation of 21 U.S.C. § 846 and with the substantive offense of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Muehlbauer waived his right to trial by jury, and was ultimately convicted on both counts. This appeal followed.

## I. FACTS

In August 1987, the Drug Enforcement Administration (DEA) was investigating a man named Jeffrey Perkins who was suspected of dealing in narcotics. At the DEA's direction, one of its informants, Paul Rubritsky contacted Perkins on August 24, 1987 to set up a drug buy. Perkins told Rubritsky that he could sell him one pound of cocaine, and that his source of supply was a man named "Rerun," otherwise known as Michael Drobac. Perkins and Rubritsky later agreed that the deal was to be consummated on August 26, 1987 at Perkins' home.

Perkins was to obtain the cocaine from Drobac, who, in turn, was supplied by a man named Kurt Bintzler. On August 26, 1987, Bintzler telephoned Drobac on Drobac's car phone, and asked to be picked up. The defendant Charles Muehlbauer was with Drobac when he received the call, and accompanied Drobac to Bintzler's home. At Drobac's request, Muehlbauer exited the car and went into the house while Bintzler loaded a box containing the cocaine into the trunk of Drobac's car.

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

Bintzler also placed a police scanner inside the car. Drobac and Muehlbauer subsequently dropped Bintzler off at Perkins' house, and proceeded to an automobile auction. The police scanner and the cocaine remained in Drobac's car.

Having satisfied himself that Rubritsky had the money to pay for the cocaine, Bintzler called Drobac on Drobac's car phone and directed him to deliver the cocaine. When Drobac and Muehlbauer arrived, Bintzler advised them that "this was going down." Bintzler then walked to the trunk of Drobac's car, removed the package containing the cocaine, spoke again with Drobac and returned to the house. Drobac and Muehlbauer pulled out of the driveway and proceeded to drive back and forth in front of Perkins' house, slowing down as they passed the house.

At that point DEA agents moved in and placed Bintzler under arrest. They subsequently located Drobac and Muehlbauer in the parking lot of a nearby liquor store. As the agents approached Drobac's car, Muehlbauer and Drobac leaned forward and appeared to be putting something under the seat. When asked, Muehlbauer acknowledged that there were, in fact, weapons under the front seat of the car. A search of the vehicle uncovered a loaded two-shot derringer pistol under the driver's seat and a loaded and cocked .9 mm semiautomatic pistol under Muehlbauer's seat. The search also uncovered an operating police scanner in the middle of the front seat.

## II. ARGUMENTS

Following a two-day bench trial, Muehlbauer was convicted of conspiring to distribute cocaine and with the substantive offense of distributing cocaine. He challenges his conviction on two grounds, alleging: (1) that the evidence was insufficient to support a conspiracy conviction, and thus a conviction for the substantive offense; and (2) that he was denied the effective assistance of counsel guaranteed under the Sixth Amendment.

### A. Sufficiency of the Evidence

Muehlbauer argued both at trial and on appeal that he was nothing more than an unwitting participant in the events which transpired on August 26, 1987. While he acknowledges that he was present at the scene of the crime, that he knew Drobac and that he may have been aware of the *possibility* of criminal activity, he contends that such factors do not, by themselves, support a conspiracy conviction. *United States v. Williams*, 737 F.2d 594, 615 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Dalzotto*, 603 F.2d 642, 645 (7th Cir.), *cert. denied, Young v. United States*, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979). Muehlbauer contends that the evidence presented at his trial established nothing more, and that the government has therefore failed to prove an essential element of the offense charged—that he knowingly participated in a conspiracy to distribute and sell cocaine.

While the government concedes that mere association is insufficient to support a conviction for conspiracy, it maintains that one's presence is sufficient if the circumstances indicate that the presence furthered the conspiracy. *Dalzotto*, 603 F.2d at 645; *United States v. Mancillas*, 580 F.2d 1301, 1308 (7th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). The government contends that the evidence of Muehlbauer's repeated trips to Perkins' house, the conversations with Bintzler while he was getting the cocaine from the trunk of Drobac's car, and the presence of the loaded weapons and operating police scanner, made it more likely than not that Muehlbauer knew of, and participated in, the conspiracy.

It is our job, in reviewing the evidence against Muehlbauer, to determine whether any rational trier of fact could have concluded that he was guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Grier*, 866 F.2d 908, 922 (7th Cir.1989). In making that determination, we look at the evidence in the light which is

most favorable to the government. *Grier,* 866 F.2d at 922.

We have generally defined a conspiracy as "a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Whaley,* 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). *See also United States v. Reed,* 875 F.2d 107, 111 (7th Cir. 1989); *United States v. DeCorte,* 851 F.2d 948, 953 (7th Cir.1988). To establish the existence of a conspiracy, the government must have shown: "[1] that there was an agreement between two or more persons to commit an unlawful act, [2] that the defendant was a party to the agreement, and [3] that an overt act was committed in furtherance of the agreement by one of the co-conspirators." *United States v. Bruun,* 809 F.2d 397, 410 (7th Cir.1987), *quoting United States v. Noble,* 754 F.2d 1324, 1328 (7th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).

> It is well established that a conspirator need not know all of the members or details of a conspiracy to be held responsible as a co-conspirator. The government need only prove the existence of a conspiracy and a participatory link with the defendant. (Citations omitted).

*United States v. Missick,* 875 F.2d 1294, 1297 (7th Cir.1989). *See Blumenthal v. United States,* 332 U.S. 539, 556, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947); *Dalzotto,* 603 F.2d at 645. The knowledge element, however, is satisfied only if the government can prove that the defendant was aware of the "essential features and broad scope" of the conspiracy. *Grier,* 866 F.2d at 926, *quoting Blumenthal,* 332 U.S. at 558, 68 S.Ct. at 257. In meeting its burden of proof, the government may rely solely on circumstantial evidence. *Reed,* 875 F.2d at 111; *United States v. D'Antoni,* 874 F.2d 1214, 1221 (7th Cir.1989); *United States v. Neapolitan,* 791 F.2d 489, 506 (7th Cir.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). It is "only when the record contains no evidence, regardless of how it is weighed, from which the [trier of

fact] could find guilt beyond a reasonable doubt" that a conviction will be overturned. *United States v. Moore,* 764 F.2d 476, 478 (7th Cir.1985). *See also Grier,* 866 F.2d at 923; *Whaley,* 830 F.2d at 1472.

The record in the present case clearly establishes the existence of a conspiracy between Perkins, Drobac and Bintzler to distribute cocaine. Muehlbauer contends, however, that his only connection to the group was his association with Drobac, that he did not know Bintzler or Perkins, and that he was only with Drobac on August 26 because they had made arrangements to attend the automobile auction. While he acknowledges that he might have been aware that "something" illegal was transpiring, he contends that he was not aware of the specific nature of the transaction or the dealings between Drobac, Perkins and Bintzler.

Muehlbauer's version of the events which transpired on August 26 is not beyond the realm of possibility. Neither is it the only version. As we noted in *United States v. Radtke,* 799 F.2d 298 (7th Cir. 1986), when the government's case is based on circumstantial evidence, "[it] need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." *Radtke,* 799 F.2d at 302, *quoting United States v. Thornley,* 707 F.2d 622, 625 (1st Cir.1983). "The trier of fact is free to choose among various reasonable constructions of the evidence." *Thornley,* 707 F.2d at 625.

Once the existence of the conspiracy was established, even a slight connection between Muehlbauer and the conspiracy could have supported a conviction. *Grier,* 866 F.2d at 924; *United States v. Green,* 735 F.2d 1018, 1028 (7th Cir.1984); *United States v. Xheka,* 704 F.2d 974, 988 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). The court found that there was sufficient evidence before it to establish such a connection, and we agree.

The evidence showed that Muehlbauer was privy to several conversations between Drobac and Bintzler regarding the transac-

tion; that while he may not have seen the cocaine actually being loaded into the trunk of Drobac's car, he was with Drobac when they delivered the cocaine to Perkins, and when Bintzler removed the cocaine from the trunk; that he was monitoring police transmissions while he was in the car; that he and Drobac drove back and forth in front of Perkins' house while the transaction was being completed, surveying the area; that he was aware that there were concealed weapons under the front seat of Drobac's car; and, that he, in fact, attempted to conceal a loaded weapon at the time of his arrest.

While the evidence was largely circumstantial, we believe it was sufficient to support a conviction on the conspiracy count, and on the substantive count. There was sufficient evidence before the court from which it could have concluded that Muehlbauer's presence at the scene of the crime and his association with Drobac and the other co-conspirators was more than incidental or social, and that Muehlbauer knowingly participated in the conspiracy to distribute cocaine.

Although Muehlbauer claims to be an "unwitting participant" in the transaction, it is clear from the evidence that he either knew, or had reason to know, of the specific criminal objective of the group with which he was associated, and that he actively participated in achieving that common objective. The court could have reasonably concluded based on the evidence that Muehlbauer "willfully shut his eyes for fear of what he might see if he opened them," and that the knowledge requirement was therefore satisfied. *United States v. Cerro*, 775 F.2d 908, 911 (7th Cir.1985). *See also Grier*, 866 F.2d at 924; *United States v. Josefik*, 753 F.2d 585, 589 (7th Cir.1985).

#### B. *Ineffective Assistance of Counsel*

Muehlbauer also challenges his conviction under the Sixth Amendment, contending that he was denied the effective assistance of counsel. He contends that his attorney failed: (1) to conduct effective cross-examination of the government's witnesses; (2) to conduct meaningful discovery; (3) to call "critical" witnesses in his defense; and (4) to let him testify on his own behalf. Muehlbauer also suggests that, given the nature of his defense, it was an "ill-advised" choice to waive trial by jury.

In reviewing a claim of ineffective assistance of counsel, we look to the totality of the circumstances, ever mindful of the fact that there exists a strong presumption that counsel rendered reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *United States v. Zylstra*, 713 F.2d 1332, 1338 (7th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). To overcome that presumption and prevail on his claim, Muehlbauer must show: (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficiencies prejudiced his defense. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *United States v. Moya–Gomez*, 860 F.2d 706, 763 (7th Cir.1988). The first component is satisfied if Muehlbauer can identify specific "acts or omissions ... which were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066; *Moya–Gomez*, 860 F.2d at 763–74. To satisfy the second component, Muehlbauer "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. He has done neither. Muehlbauer's objections to counsel's performance are phrased in very broad and conclusory terms, as are his allegations of prejudice.

Although Muehlbauer claims counsel's cross-examination was "ineffective," he cites but one example—counsel's failure to inquire as to whether there were fingerprints on the guns which were found in Drobac's car. Muehlbauer appears to suggest that had his attorney inquired, the evidence might have shown that his fingerprints were not found on either weapon, distilling any inference that Muehlbauer

was "riding shotgun." We are inclined, however, to agree with the government, that such evidence was not relevant to the offenses charged. The fact that the weapons were present in the car and that Muehlbauer knew they were there lends credence to the government's position that Muehlbauer *knowingly* participated in the conspiracy. It is not a prerequisite to such a conclusion that Muehlbauer have actually touched either one of the weapons. The components of the *Strickland* analysis have not been satisfied. Muehlbauer has failed to show that counsel's decision not to inquire fell outside the range of professionally competent assistance, or "that there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

██ Muehlbauer's objections to counsel's discovery requests are similarly flawed. Muehlbauer contends that his attorney failed to file any demands for exculpatory evidence; to demand that the weapons uncovered during the search of Drobac's car be fingerprinted; or, to determine whether the police scanner which was found in Drobac's car was operable inside a moving vehicle. He failed to demonstrate, however, that any exculpatory evidence was available, or that it was withheld from counsel under the "open file" policy followed by the United States Attorney's office in the Eastern District of Wisconsin. With respect to the fingerprint and scanner tests which Muehlbauer contends should have been conducted, the government maintains that the tests are irrelevant to the crimes charged. We tend to agree. The decision to conduct or not to conduct the type of discovery suggested is a tactical one, to which we give great deference. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

██ Muehlbauer also challenges counsel's failure to call certain witnesses who he maintains were "critical" to his defense, namely Bintzler and an FBI agent named Craft, who was dealing with Bintzler in a separate undercover operation. Muehl-

bauer contends that the testimony of these two witnesses would have established his innocence. Such conclusions, however, are merely speculative. There is nothing in the record to suggest that either Bintzler or Craft had information which would have exonerated Muehlbauer, or that they would have attested to his innocence. Muehlbauer would have us infer from the mere fact that the government chose not to call Bintzler as a witness, that Bintzler's testimony would have been unfavorable to the government, and would have established his innocence. Absent some indication of what Binzler's testimony would have been, we are unable to draw any inference with respect to Muehlbauer's guilt or innocence. We attribute counsel's failure to call Bintzler and the FBI agent to the routine tactical choices engaged in by attorneys. Counsel's failure to call Bintzler and Craft does not, in our opinion, render his performance deficient.

██ Muehlbauer also contends that his decision to waive trial by jury was "ill-advised." We tend to agree, but note that there is no indication that the decision was made on the advice of his attorney or that it was not knowingly and voluntarily made.

██ The same can be said for Muehlbauer's decision not to take the stand in his own defense. While a defendant's right to testify is a personal right which is not waivable by defense counsel for tactical reasons absent the defendant's consent, *Ortega v. O'Leary,* 843 F.2d 258, 261 (7th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988), there is no indication in the present case that Muehlbauer ever expressed to his attorney or to the court a desire to testify in his own behalf; that his attorney failed to comply with such a request; or that his decision not to testify was not knowingly and voluntarily made. We find nothing in the record to suggest that trial counsel's performance in Muehlbauer's case was professionally inadequate or deficient.

## III. *CONCLUSION*

Having concluded that there was sufficient evidence to convict Muehlbauer of

both a conspiracy to distribute cocaine and the substantive offense of distributing cocaine, and that Muehlbauer has failed to establish an ineffective assistance of counsel claim, we now AFFIRM the judgment of the district court.