956 F.2d 273
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Timothy S. SWATZELL, Defendant/Appellant.
 No. 91-1952.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 6, 1992.*
Decided March 2, 1992.
 
 1
 Before RIPPLE and MANION, Circuit Judges, and ROBERT A. GRANT, Senior District Judge**.
 
 ORDER
 
 2
 Following a bench trial, defendant Timothy Swatzell was convicted of both conspiring to distribute and distributing cocaine and sentenced to five years in prison. 21 U.S.C. §§ 846 and 841(a). On appeal he contends that the evidence was insufficient to support his conviction.
 
 BACKGROUND
 
 3
 Swatzell was a paramedic with the Chicago Fire Department. In his spare time he ran a juice bar/concession stand in Joe's Body Shop, a gym run by co-defendant Joe Thomas. Swatzell had met Thomas some ten years ago, and the two became re-acquainted when Swatzell began working out at the gym. Eventually Swatzell bought an interest in the gym, running the concession stand and dividing the profits with Thomas. This continued until the two were arrested six months later.
 
 
 4
 In September of 1989 an undercover narcotics agent began investigating Joe Thomas. The agent (Gary Reichenberger) met with Thomas and eventually arranged a marijuana-for-cocaine transaction. In meetings with the agent Thomas often referred to his "man" or "partner" in Arlington Heights, who turned out to be Stephen Ickow, the cocaine supplier. No one mentioned or referred to Swatzell during the negotiations leading to this deal. On September 22nd Swatzell got off work as a paramedic early in the morning and went to the gym to prepare his juice bar for the day. Joe Thomas spoke with Swatzell at the gym and convinced him to "take a ride." Though he was unsure where they were going or why, Swatzell suspected he had been invited to help Thomas collect a debt, as he had mentioned that earlier in the day. Swatzell followed Thomas to a mall in Forest Park, Illinois. At the mall they switched cars, Thomas taking Swatzell's Nissan Pathfinder and Swatzell sitting in Thomas's Corvette, which was equipped with a car phone. Thomas drove across the parking lot and parked next to agent Reichenberger's car. He got into the agent's car and began to discuss the drug deal. Soon Swatzell pulled up in the Corvette and parked on the other side of Reichenberger. Thomas told Reichenberger that Swatzell was there to make sure everything went smoothly. According to Reichenberger, he and Thomas discussed the transaction for a few minutes, then Thomas and Swatzell rolled down their windows and Thomas said "call him," after which Swatzell picked up the car phone and appeared to place a call. Thomas got into the Corvette and began speaking on the phone, then rolled up the tinted window while Swatzell pulled the car forward, out of Reichenberger's view.[1] The apparent purpose of this call was to notify Steven Ickow that Thomas was coming to pick up the cocaine to trade with Reichenberger.
 
 
 5
 Thomas then told Reichenberger that he needed to make a quick trip to the 7-Eleven and drove off. Swatzell remained. While Thomas was gone, Swatzell called Reichenberger on the car phone and told him that Thomas was running late and would be back soon. He identified himself as "the guy sitting next to you in the Corvette."[2] He also told Reichenberger that Thomas was waiting for his "man" to deliver a package to the 7-Eleven. Soon thereafter, Thomas returned and went directly to the agent's car, where he showed him the cocaine. Reichenberger then gave a pre-arranged signal and agents moved in, arresting Thomas and Swatzell.
 
 DISCUSSION
 
 6
 Swatzell's trial defense was that he was an innocent bystander who ended up in the wrong place at the wrong time. He claimed that he thought Thomas was collecting a debt, but was unsure, and that whenever he asked Thomas what was going on, he promised to explain everything later. The district court found the agent's testimony to be credible, and disbelieved the defendant because Thomas could not have been so careless as to bring an uninformed, unpredictable innocent to a drug transaction. Swatzell alleges that the evidence was insufficient to support this verdict.
 
 
 7
 In reviewing the sufficiency of the evidence we ask whether, taking the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crimes charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); United States v. Muehlbauer, 892 F.2d 664, 666 (7th Cir.1990). Swatzell was convicted of conspiracy to distribute cocaine and distribution of cocaine. To establish a conspiracy, the government must show that there was an agreement between two or more persons to commit an unlawful act, that the defendant was a party to the agreement, and that one of the conspirators committed an overt act in furtherance of the conspiracy. Muehlbauer, 892 F.2d at 667. To be convicted as a conspirator, a defendant need not know all of the details, so long as the government has submitted substantial evidence proving the existence of a conspiracy and the defendant's participatory link to it. United States v. Caudill, 915 F.2d 294, 297 (7th Cir.1990); United States v. Durrive, 902 F.2d 1221, 1229 (7th Cir.1990). As the conspiracy between Thomas and Stephen Ickow was clear, the question here is whether Swatzell both knew of the conspiracy and, in some manner, participated in it.
 
 
 8
 This case is close to the line between mere presence at the scene of a crime or association with conspirators, which is not illegal ( See United States v. Dalzotto, 603 F.2d 642, 645 (7th Cir.1979)), and knowingly assisting those conspirators, which is. Caudill, 915 F.2d at 297. The government can use circumstantial evidence to prove its case, and " 'need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt.' " Muehlbauer, 892 F.2d at 667 (quoting United States v. Radtke, 799 F.2d 298, 302 (7th Cir.1986)). Such a link has been found even when the defendant, like Swatzell, claimed to have been an innocent bystander. See Caudill, 915 F.2d at 297 (evidence of link sufficient where defendant handled cocaine, ferried buyer to and from his supplier, and participated in sales discussions); Durrive, 902 F.2d at 1230 (evidence that defendant participated in several phone calls was sufficient to show link); Muehlbauer, 892 F.2d at 667-68 (evidence sufficient where defendant was present at key conversations and when drugs removed from car trunk, monitored police transmissions and stood lookout during the transaction, and attempted to hide loaded weapon at the time of the arrest). Taking the evidence in the light most favorable to the government, as we must, we find that the evidence here supports the conviction.
 
 
 9
 The key facts are that Swatzell switched cars with Thomas, apparently so Swatzell would have access to the car phone, and that Swatzell made two phone calls in furtherance of the drug transaction. Though Swatzell denies making the first phone call (and the government produced no phone records to prove it), the trial judge believed agent Reichenberger's testimony, and we defer to that credibility assessment. United States v. Nesbitt, 852 F.2d 1502, 1511 (7th Cir.1988). The judge also made the common sense judgment that, given the amount of planning and precaution Thomas used as to the rest of the transaction, it is unlikely that he would bring an uninitiated third party to the consummation of the deal. The court is entitled to make such findings, and we defer to them. Id. Finally, the fact that Swatzell told the agent that Thomas was waiting for a package at the 7-Eleven is patent evidence that he knew that something other than debt collection was involved. Together these facts support a finding of a participatory link between Swatzell and the Thomas-Ickow conspiracy, and his conviction is affirmed.
 
 
 10
 As a member of a conspiracy, Swatzell is liable for the foreseeable criminal acts of his co-conspirators. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946); United States v. Troop, 890 F.2d 1393, 1399 (7th Cir.1989). Therefore he is responsible for Thomas's distribution of 861.82 grams of a mixture containing cocaine, and his conviction under 21 U.S.C. § 841(a) is also affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 **
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Swatzell denied that this phone call ever occurred, testifying that Thomas got into the car and mumbled to himself, then told Swatzell he would explain everything later. The government failed to produce any phone records to settle this difference
 
 
 [2]
 Swatzell testified that he only made this call because Thomas told him to, though he did not know its purpose