JOHNSON, J. (dissenting)
 

 ¶45 This case involves review of a trial court's decision to grant a new trial based on a claim of ineffective assistance of defense counsel. The trial court identified two separate, independent grounds for granting relief: (1) counsel's alleged failure to call certain witnesses to testify to the defendant's good character for sexual morality in defending against a child molestation charge and (2) counsel's alleged clinical depression. The Court of Appeals reversed and reinstated the conviction. The majority correctly agrees with the Court of Appeals holding that no independent Fourteenth Amendment to the United States Constitution due process right to representation by counsel who is not suffering from mental illness
 exists and that the
 
 Strickland
 

 [1]
 
 analysis controls. However, in applying
 
 Strickland,
 
 the majority is impermissibly selective in its reading of the record, mischaracterizing what occurred before and during trial. In fact, the majority barely mentions, let alone analyzes, counsel's trial performance. Even more troubling is the majority's discovery in the trial court's oral ruling of an "implicit conclusion" of law, which it upholds as "legally correct." On the record before us, properly analyzed, no ineffectiveness exists.
 

 ¶46 The majority apparently believes that de novo review is a mandate to sidestep the deficiencies raised by Oscar Lopez and reached by the trial court, and to read "implicit" conclusions, which the trial court never articulated, into the trial court's ruling. The majority starts by announcing that the Court of Appeals "interpreted [the] finding [that trial counsel was severely handicapped by his depression] as relating solely to Lopez's per se prejudice/quasi-due process argument." Majority at 1122. But the Court of Appeals correctly concluded that when the trial court stated in its oral ruling that
 

 even though the court finds it difficult to make any conclusions on a more probable than not basis as to what the result would have been had Mr. [Steven] Witchley been functioning at full capacity, it seems to the court that,
 
 as a matter of due process,
 
 a defendant is entitled to be represented by somebody who is not suffering from mental illness[,]
 

 it meant exactly what it said. 11 Verbatim Report of Proceedings (VRP) (Oct. 30, 2015) at 1316-17 (emphasis added). The trial court, in discussing what effect, if any, Witchley's depression may have had on his representation of Lopez, stated:
 

 And I think the court should make it clear that in taking the mental health issues into consideration, that this is really not a
 
 Strickland
 
 analysis because under
 
 Strickland,
 
 the court would
 be required to actually find that as a result of Mr. Witchley's depression that [Lopez] was convicted essentially and that the result would have been different. That is a very difficult judgment call to make. Mr. Witchley, even despite his shortcomings, was a competent trial attorney for the most part,
 
 except for the evidentiary issues.
 

 11 VRP (Oct. 30, 2015) at 1316 (emphasis added). It is evident from this statement that the trial court's finding at issue, i.e., that Witchley's handling of the entire case was
 severely handicapped by his depression, was not susceptible, in the eyes of the trial judge, to a
 
 Strickland
 
 analysis. Furthermore, it is evident that the trial court believed that the only
 
 Strickland -
 
 type deficiency raised by Lopez was the trial attorney's performance as to the evidentiary issues, and that his overall performance at trial was "competent." And the Court of Appeals correctly concluded, and the majority apparently agrees, that the evidentiary issues did not constitute deficient performance and further did not prejudice Lopez. As of the time of the trial, case law existed recognizing that ER 404(a)(1) evidence of a defendant's good reputation for sexual morality was not admissible. In
 
 State v. Jackson
 
 ,
 
 [2]
 
 Division One explicitly held that evidence of a defendant's good reputation for sexual morality is not admissible in cases involving sexual offenses against children. Witchley's failure to "unearth" a potential divisional conflict and to anticipate or argue for a potential change in the law does not render his performance constitutionally ineffective.
 

 ¶47 The majority, however, goes on to conclude that the trial court made a factual finding that "Witchley's [f]ailures '[s]everely [h]andicapped' [h]is [p]erformance," and that that is what constitutes deficient performance by Witchley. Majority at 1127. This does not make sense. Contrary to the majority's pronouncement that "the trial court did not enter any written factual findings and conclusions of law to explain
 
 that finding
 
 " because counsel said "he did not need them,"
 
 [3]
 
 the trial court did not do so because the deficiency it identified was only that Witchley was depressed and that "had he not been handicapped by his depression, he would have been
 
 more effective
 
 ." 11 VRP (Oct. 30, 2015) at 1316 (emphasis added).
 

 ¶48 Even if we were to assume that the majority is drawing its own legal conclusions as to the deficient performance prong, the deficiencies it does eventually articulate-failure to investigate, failure to prepare for trial, and failure to show up to court-do not withstand even cursory scrutiny. When reviewing a claim of ineffective assistance of counsel, "we look to the totality of the circumstances, ever mindful of the fact that there exists a strong presumption that counsel rendered reasonably effective assistance."
 
 United States v. Muehlbauer,
 

 892 F.2d 664
 
 , 668 (7th Cir. 1990) (citing
 
 Strickland,
 

 466 U.S. at 689
 
 ,
 
 104 S.Ct. 2052
 
 ). Instead, the majority all but presumes Witchley's ineffectiveness based on the fact that he was suffering from depression at or around the time of trial.
 

 ¶49 In examining the deficient performance prong of
 
 Strickland,
 
 the majority relies heavily on trial counsel's investigator Karen Sanderson's statements about Witchley's mental state and actions. The majority fails to mention the fact that to the extent Lopez complains of trial counsel's failure to investigate in preparation for trial, no duty to investigate and call all available witnesses exists.
 
 [4]
 
 It fails to mention that Witchley did call eight witnesses at trial, and that the witnesses he allegedly failed to interview and call, and whom Sanderson perhaps was initially called upon to investigate, were, in Witchley's opinion, unnecessary because,
 as he explicitly advised Lopez, "[T]he fact that you don't molest child A is not relevant to prove that you didn't molest child B." Clerk's Papers (CP) at 227. The majority fails to mention that Witchley, among other things, aggressively sought Lopez's release pretrial, professionally litigated pretrial motions, and skillfully examined and cross-examined witnesses. In short, the majority fails to consider all of the circumstances the objective standard of
 
 Strickland
 
 commands. It does, however, embellish Witchley's tardiness and assigns great weight to Witchley's communications with Sanderson, but that proves nothing about counsel's actual effectiveness.
 The
 
 Strickland
 
 focus is, and has always been, on counsel's function, which, "as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."
 
 Strickland,
 
 466 U.S. at 690,
 
 104 S.Ct. 2052
 
 .
 

 ¶50 To what extent the majority finds any deficiency it identifies to constitute deficient performance by itself under
 
 Strickland
 
 is unclear, as is whether it finds deficient performance only by pooling piecemeal what it deems Witchley's "basic failures" together. Majority at 1127. To be clear, however, none of the "deficiencies" the majority articulates, by themselves, or in their totality, are sufficient to meet the first prong of
 
 Strickland.
 
 What the record shows is that Witchley did conduct a reasonable investigation, including five critical witness interviews with Sanderson's help: those of the complainant, the child's mother, the first responding police officer, the defendant's wife, and the defendant's supervisor. Witchley had Sanderson photograph the parking lot and the church, i.e., the scene of the alleged crime. He subpoenaed documents from Truman Elementary School to establish Lopez's whereabouts on the day of the alleged incident. The record also shows, and the State correctly argues, that in the course of preparing for trial, Witchley was present for the State's interviews of all of the defense witnesses and litigated over 20 pretrial motions, with no claimed counsel deficiencies or severe handicap.
 

 The majority also points to Witchley's e-mailing the court to " 'call[ ] in sick,' " 11 VRP (Oct. 30, 2015) at 1313, as well as his alleged absence before a different judge in support of its
 
 Strickland
 
 deficiency. While not commendable, attorney tardiness presumably may be more common than the majority would like to believe. The majority's conclusion that counsel's performance fell below an objective standard of reasonableness in light of all the circumstances without mentioning or analyzing the entirety of the trial court's factual findings, by selectively assigning weight to facts in the record and ignoring the attorney's actual trial performance, erroneously abandons the burden
 
 Strickland
 
 imposes.
 

 ¶51 Ultimately, the majority agrees with the trial court's decision to grant a new trial based on its "implicit legal conclusion that [the adverse effect of Witchley's mental illness] amounted to prejudice." Majority at 1128 (citing 11 VRP (Oct. 30, 2015) at 1311-15). This flies in the face of the trial court's own statement that it cannot "actually find that as a result of Mr. Witchley's depression that [Lopez] was convicted ... and that the result would have been different."
 
 [5]
 
 11 VRP (Oct. 30, 2015) at 1316. The Court of Appeals on de novo review correctly found that the trial court's conclusions of law were unsustainable, both as to its pronouncements pertaining to the admissibility of character evidence and as to the defendant's due process entitlement to counsel free from mental illness. Neither is supported by the facts in the record before us; neither is a sound legal conclusion to be drawn. While it may very well be that trial counsel was depressed, the majority's characterization of Witchley's deficiencies as "debilitating," majority at 1128, is hard to reconcile with the trial court's characterization of that same performance as "competent," 11 VRP (Oct. 30, 2015) at 1316, and Sanderson's statement that despite Witchley's depressed state, once he "got to court, it was okay." CP at 291.
 

 ¶52 And even if Witchley's performance fell below an objective standard of reasonableness in light of all the circumstances, none of the other acts or omissions by Witchley the majority selectively relies on reaches the requisite level of reasonable probability of a different result for Lopez. The majority's legal analysis does little to clarify on what grounds it upholds the trial court's reasoning. To conclude that Lopez was prejudiced because "the serious deficiencies in Witchley's pretrial preparation and trial performance were clear and debilitating," majority at 1128, is to employ circular reasoning. The majority's reliance on the close nature of the case is also unpersuasive in this context.
 
 [6]
 

 Perhaps the most troubling aspect of the decision the majority reaches today is that it requires our appellate courts to divine "implicit" conclusions in reviewing the trial courts' actions in order to avoid being overturned. We should affirm the Court of Appeals' well-reasoned opinion.
 

 Yu, J.
 

 Owens, J.
 

 González, J.
 

 YU, J. (concurring in dissent)
 

 ¶53 I agree with the concerns expressed by the dissent that the majority mischaracterizes the record in order to affirm a finding of deficiency for counsel's failure to offer evidence of Lopez's "good reputation" for sexual morality in a child molestation case when binding precedent held such evidence inadmissible. Dissent at 1129, 1129-30. I also agree that we should affirm the Court of Appeals' decision that the trial court erred in granting a new trial on the basis that counsel suffers from
 severe depression.
 
 Id.
 
 at 1129.
 
 Strickland
 

 [1]
 
 requires an actual showing of deficient performance
 
 and
 
 prejudice, and the record in this case does
 
 not
 
 support either.
 

 ¶54 I write separately because I cannot find myself embracing a standard that permits constitutional ineffectiveness when counsel is chronically late or has not submitted invoices for payment. As a former trial court judge, I could list a host of other reasons lawyers routinely made trial management difficult for me, but none go to the heart of the issue: effective representation of a client. To permit behaviors like chronic lateness to be the basis for constitutional ineffectiveness, as the majority does, is to dramatically lower our threshold for prejudice.
 

 ¶55 I also write to state my unease with shifting the inquiry of "ineffectiveness of counsel" from a review of overall trial performance to a review of counsel's mental health as
 
 a measure
 
 of performance. I refuse to accept the underlying proposition that depression or some form of mental illness renders an attorney incompetent, especially in hindsight. The majority paves the way for a per se rule that permits inquiry into an attorney's mental health, including any history of diagnosis and treatment, rather than focusing on his or her actual conduct or performance. Lawyers should now expect that their mental health or personal stress level will be part of an ineffectiveness and/or malpractice claim.
 

 ¶56 As noted in the State's answer to the Washington Association of Criminal Defense Lawyers' (WACDL) amicus brief, asking lawyers about their history of diagnosis or treatment likely violates the Americans with Disabilities Act of 1990,
 
 42 U.S.C. §§ 12101
 
 - 12213, and serves to perpetuate myths about mental illness. Answer to WACDL
 

 Amicus Br. at 7.
 
 [2]
 
 In 2016, we amended the Admission and Practice Rules to remove questions that target applicants who have sought mental health treatment. It was a milestone in the fight for equality when we focused the inquiry of fitness to practice law on the ability to perform essential functions rather than on a knee-jerk reaction to disability status. It was an effort to ensure that applicants are not barred because of a diagnosis or history, while still prohibiting those who cannot perform the essential functions-even if due to a disability-from practicing law. The unintended consequence of today's majority decision is to shift that inquiry right back to disability status and make it center stage.
 

 ¶57 I respectfully concur in the dissent.
 

 Strickland v. Washington,
 

 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984).
 

 46 Wash. App 360
 
 , 365,
 
 730 P.2d 1361
 
 (1986).
 

 Majority at 1125 (emphasis added). Lopez's second attorney simply stated that he did not object "to the court incorporating by reference its oral ruling since it was in detail." 11 VRP (Oct. 30, 2015) at 1319.
 

 "Under the Sixth Amendment [to the United States Constitution], counsel is required to conduct a
 
 reasonable
 
 investigation."
 
 In re Pers. Restraint of Davis,
 

 152 Wash.2d 647
 
 , 735,
 
 101 P.3d 1
 
 (2004). "Generally the decision whether to call a particular witness is a matter for differences of opinion."
 
 Davis,
 

 152 Wash.2d at 742
 
 ,
 
 101 P.3d 1
 
 .
 

 The majority omits this statement by the trial court entirely.
 

 To assert that there is a reasonable probability that but for instances of tardiness, failure to interview more witnesses whose testimony counsel deemed inadmissible to begin with, or failure to "develop the defense" that from the trial record appears to have been reasonably developed, the result of the proceedings would have been different because this was not a "slam-dunk" case is not a sound legal conclusion. Majority at 1126,1128. Whether the majority views the strength or weakness of the State's case as a factor, the jury and not this court makes the final decision.
 

 Strickland v. Washington,
 

 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984).
 

 See also
 
 Disability Rights Wash., Questions of Discrimination , http://stats.disabilityrightswa.org/questions-discrimination [https://perma.cc./N3PH-BH7J] (last visited Feb. 7, 2018).