**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Manuel RAMOS, Defendant–Appellant.**

No. 87–1204.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1987.

Decided Oct. 8, 1987.

James A. McCarron, Law Ofce. of James A. McCarron, Chicago, Ill., for defendant-appellant.

Gregory A. Vega, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before WOOD, CUDAHY and COFFEY, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

This is an appeal from a jury verdict in a narcotics case in which the only issue is the effectiveness of trial counsel.

On September 19, 1986, Manuel Ramos and Nelson Hernandez, codefendants, were named in a two-count indictment. Both defendants were named in Count I; only Hernandez was named in Count II. This appeal involves Count I, but only insofar as it charged Ramos. The indictment charged that Ramos intentionally possessed and distributed 27.97 grams of a mixture containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Ramos was found guilty;[1] codefendant Hernandez entered into a plea agreement with the government and was the principal witness against Ramos.

## I. FACTUAL BACKGROUND

The facts need only be briefly recounted. Drug Enforcement Administration (DEA) Special Agent Ava Cooper, assisted by an unidentified informant, arranged to purchase cocaine from Hernandez on February 11, 1986, at a bar in East Chicago, Indiana. On that occasion other DEA agents and East Chicago narcotics investigators provided surveillance.

When Special Agent Cooper arrived, Hernandez came out of the bar and got into her car with her. He did not have the cocaine yet, he explained, but said that it would arrive shortly. They parted and Special Agent Cooper returned a half-hour later. Hernandez still did not have the cocaine, he explained, because his supplier had not yet arrived. After that there were various goings and comings during which Hernandez was observed for short periods of time in the company of two unidentified females.

When the cocaine had still not arrived after another forty-five minutes Special Agent Cooper threatened to call off the purchase, but Hernandez again assured her the cocaine was due and would be there. Just then a car driven by defendant Ramos arrived and parked across the street from the bar. Ramos got out of his car and crossed the street toward the bar to where Hernandez was waiting in his car. Defendant Ramos pulled a plastic object from his pocket and handed it to Hernandez. This transaction was observed by an officer using binoculars. As Hernandez drove away he waved for Special Agent Cooper to fol-

---

1. Ramos was sentenced to a term of imprisonment of three years with a special parole term of three years.

low, but she declined and Hernandez returned and parked. The matter was concluded when Hernandez delivered the cocaine to Special Agent Cooper in exchange for $2,300. Hernandez then went back in the bar, and according to his testimony, gave $1,500 of the proceeds to Ramos in the privacy of the restroom.

At trial there was some dispute as to whether Hernandez received the cocaine in Ramos's auto as Hernandez testified, or in Hernandez's own automobile as described by two of the surveilling investigators.

Ramos testified in his own defense. He had no specific recollection of the events of that day, but he denied participating in any cocaine transaction with Hernandez or anyone else.

## II. DISCUSSION

In assessing counsel's performance, we must determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). As far as we can tell by the record, defendant Ramos's counsel was " 'within the range of competence demanded of attorneys in criminal cases.' " *United States v. Cronic,* 466 U.S. 648, 655, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). The burden of the prosecution is on the government, but the burden of showing the alleged ineffective assistance of counsel is on the defendant. 466 U.S. at 658, 104 S.Ct. at 2046. Merely showing that counsel should have done better, or even that counsel was clearly deficient, is not enough unless the defendant can show, first, that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Buchbinder,* 796 F.2d 910, 917 (7th Cir.1986). And secondly, "the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. at 2064. *Strickland* recognizes a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065; *United States v. Norwood,* 798 F.2d 1094, 1100 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 656, 93 L.Ed.2d 711 (1986). There is no particular and specific model to which attorneys must adhere. Their performance may be as varied as their cases, learning, experience, and personalities, yet all may be reasonably effective. It could not be otherwise. This cursory examination of the applicable criteria foretells the result in this case.

Defendant Ramos points to six alleged mistakes that demonstrate the ineffectiveness of his trial counsel. We shall note and dispose of them briefly.

(1) Ramos claims his trial counsel failed to show that his codefendant Hernandez made a deal with the government for himself at the expense of Ramos, but the record clearly belies that allegation. The jury was informed of this development through Hernandez's own testimony.

(2) A confidential informant was present throughout the transaction but was never identified or called to testify. That omission, however, was no doubt a wise tactical decision lest defense counsel now be charged with helping to prove the government's case. *Cf. Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (courts balance defendant's need for disclosure of informant's identity against public's interest in encouraging citizens to report crimes through anonymity of informants in determining whether to require disclosure). Here, there was no evidence of the informant's having had any contact with Ramos, and the informant's testimony would do nothing more than corroborate that of Special Agent Cooper. The public interest in guaranteeing confidentiality of informants clearly outweighs Ramos's interest in testimony that could only hurt his case.

(3) Ramos claims that his girlfriend, with whom he was living and who had borne his child, might have testified about a vague

conversation between defendant Ramos and Hernandez just outside the courtroom before Hernandez's trial. Ramos claims that in that conversation Hernandez expressed surprise that Ramos and his girlfriend were there for his case. On cross-examination Hernandez denied making that statement. Even if Ramos's girlfriend had been called, and even if the jury had believed her, her testimony about the brief conversation could not have helped his case, and might instead have damaged it further. Counsel's considered decision not to call a witness or introduce an item of evidence that may damage the client's case does not amount to ineffective assistance of counsel. *United States v. Curtis,* 742 F.2d 1070, 1074 (7th Cir.1984), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986). The decision not to call Ramos's girlfriend was a tactical decision that we will not second-guess from here.

(4) Defendant Ramos now claims that there were some inconsistencies among some of the details of the testimony of the surveillance agents, particularly details as to whose car was involved when the defendant passed the cocaine to Hernandez. Trial counsel offered no explanation for the inconsistencies, but the fact remains that the cocaine passed. The jury had enough evidence to support its judgment that Ramos supplied the cocaine to Hernandez.

(5) Ramos says trial counsel should have more fully explored the brief wanderings of Hernandez just before the transaction. He asserts that the two unidentified females with whom Hernandez was seen could have been the source of the cocaine, and that trial counsel should have attempted to bring this out. Hernandez, however, testified that the cocaine came from Ramos. Counsel's decision not to inquire into the details of Hernandez's excursions was a valid tactical choice. It was clear enough, from Hernandez's testimony, where Hernandez got the cocaine.

(6) Ramos now tries to make something of the fact that he was not arrested immediately when the crime was completed. An agent explained to the jury that arrests are sometimes postponed in the belief that the

investigation will lead agents to persons higher in the illegal supply chain. Although defendant's trial counsel made a substantial final argument, attacking the government's case and concentrating on the only defense there was, that the government agents all misrepresented the truth, the jury apparently chose to believe the government, a choice we will not now disturb.

Ramos has failed to demonstrate the level of incompetence required to prove that his trial counsel provided him with ineffective assistance.

### III. CONCLUSION

Even if we concede that trial counsel might have done a better job defending Ramos than she did, it would make no difference to this appeal. In any event her performance was adequate. The test is not whether or not the client is convicted. Defense counsel's assistance may not be a model to be followed, but it was adequate in the circumstances of this case, which could have been prolonged, but not won, even by counsel who might have done more to satisfy the deficiencies now claimed by the defendant.

The seasoned trial judge who watched defendant's counsel's performance did not find it deficient, and neither do we.

AFFIRMED.