**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Segun ASHIMI, Defendant–Appellant.**

**No. 90–1014.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1991.

Decided May 14, 1991.

Rehearing and Rehearing In Banc Denied July 12, 1991.

**644**

Patrick S. Layng, Barry R. Elden, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Jeffrey B. Steinback, Genson, Steinback & Gillespie, Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., COFFEY and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

After a one-day bench trial, Segun Ashimi was found guilty of two counts of possession with intent to distribute a controlled substance. *See* 21 U.S.C. § 841(a)(1). On direct appeal he challenges only one aspect of his conviction—the pretrial performance of his trial counsel. We cannot conclude on this record, however, that Ashimi was deprived of his sixth amendment right to effective legal assistance. We therefore affirm.

### I.

Ashimi was charged in a two-count indictment filed on September 14, 1989.[1] Five days later, he appeared before the district court for arraignment and plead not guilty. His counsel, Mr. Seiden, thereafter waived what the district court referred to as the "30–day requirement."[2] The district court, the government, and Seiden viewed the case as one that could be tried quickly, and trial was set for September 25, 1989.

During the next six days, the record indicates that Ashimi's counsel did not initiate any formal discovery as to the government's case. It does not disclose (with the exception of an incident that we will reach momentarily) the extent, if any, of informal discovery that may have been sought from the United States Attorney's office. Nor does the record indicate the extent, if any, of attempts to procure information from

---

1. After his arrest on August 18, 1989, Ashimi appeared before a magistrate for both a preliminary hearing and a detention hearing on August 23, 1989. The magistrate ordered him detained pending trial.

2. This reference presents some uncertainty. It appears to derive from the Speedy Trial Act, which states: "Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." 18 U.S.C. § 3161(c)(2). By his own admission, however, Ashimi first "appeared" with counsel on August 18, 1989. And

as this date was more than thirty days before the trial, there was no "30–day requirement" to waive on September 19; the district court could have set trial for September 25 with or without Ashimi's approval. *See United States v. Rojas,* 783 F.2d 105, 107 (7th Cir.), *cert. denied,* 479 U.S. 856, 107 S.Ct. 195, 93 L.Ed.2d 127 (1986).

In addition, section 3161(c)(2) by its terms requires the defendant, not the defendant's attorney, to execute the waiver and also requires that the consent must be in writing, neither of which appears to have occurred here. The parties have not raised these issues, however, and we find it unnecessary to address them at this time.

sources outside of the United States Attorney's office.

September 25 arrived and the one-day trial proved true to expectations. The government presented three witnesses. The first, Officer Holliday, testified that on April 13, 1989, he travelled to a Dominick's parking lot for the purpose of effectuating an undercover narcotics purchase. He was accompanied by a confidential informant, identified only as "Tucson," who had prearranged a meeting with a third man. When this third man (who Holliday identified as Ashimi) arrived in a red Toyota Celica convertible with a black top, the informant introduced the man as Ashimi and then walked away. Holliday got into Ashimi's car and exchanged $3300 for a clear plastic bag containing a brown rocky substance. After an exchange of telephone pager numbers, Holliday got out of the car and Ashimi departed. Holliday and the informant then parted company after speaking momentarily.

Officer Holliday also testified that he contacted Ashimi on May 3, 1989, and discussed the possibility of a second narcotics purchase. Another meeting, this time not involving Tucson, was arranged at the Dominick's parking lot on March 4, 1989, and Ashimi again arrived in a red Toyota Celica convertible with a black top. Holliday got into Ashimi's car and exchanged $3800 for a clear plastic bag containing a brown lumpy powdery substance. Both this substance and the substance purchased on April 13 ultimately tested positive for heroin.

After several unsuccessful calls to Ashimi's pager, Holliday was able to schedule a third meeting at the Dominick's parking lot for August 18, 1989. Ashimi had initially protested, explaining that he was no longer in the business of selling heroin, but later agreed to try to locate another individual to procure the heroin. Ashimi arrived at the scheduled time, once again in a red Toyota Celica convertible with a black top, but was unaccompanied. Holliday gave a prearranged signal and Ashimi was arrested.

When Seiden cross-examined Holliday, he brought out the fact that Tucson was compensated for his services. On recross the following colloquy occurred:

MR. SEIDEN: However, if [Tucson] did anything that you would not have countenanced outside of your presence, you would not have any information with respect to that. Is that correct? I mean, if he did something that you would not normally agree with, but he did it out of your presence, you wouldn't have known about it. Is that right?

OFFICER HOLLIDAY: That is correct.

MR. SEIDEN: The fact that I don't have his name means that I can't investigate whether or not he did anything out of your presence, too.

MS. DAVIS (AUSA): Objection, Judge.

THE COURT: That objection will be sustained.

MR. SEIDEN: We'll save that for argument, Judge.

The government's second witness, Officer Montgomery, testified that he was assigned to set up surveillance at the Dominick's parking lot on both April 13, 1989, and May 4, 1989. He corroborated Holliday's testimony to the extent his vantage point allowed and also identified Ashimi as the driver of the Toyota.

The government's third witness, Special Agent Mark Hunter, testified as to events on August 18. He stated that an inventory search of Ashimi's Toyota produced a container disguised as a car battery. He also testified as to a subsequent search of Ashimi's apartment, which revealed $3900, a false beer can with a hollow interior, and a Nigerian passport. Neither the search of Ashimi's person, nor the search of the Toyota, nor the search of the apartment produced additional quantities of controlled substances.

The defense called only two witnesses. The first, Agent Hunter, testified that the passport found in Ashimi's apartment contained the defendant's photo but was in the name of Olsegun Bolaji Lasisi. Ashimi also testified in his own behalf.

Ashimi, a Nigerian citizen, recounted the story of a prior drug arrest in the United

States for which he had been sentenced in 1986 to a period of incarceration and probation. One of the conditions of probation was that he return to Nigeria, a condition that he initially complied with, although not without some difficulty.[3] Once in Nigeria, Ashimi attempted to make arrangements for his wife and children to join him there. He also applied for a Nigerian passport using the name Olsegun Bolaji Lasisi.

By using the passport, Ashimi obtained visas by which to visit the United States, including a "multiple visa"[4] which was in effect during the time in question. Ashimi testified that he used the multiple visa to enter this country on March 20, 1989, was permitted by the port of entry to remain three weeks, and departed for Nigeria on April 3. He did not thereafter return to the United States until August 12, 1989. He also denied accusations that he had been in the Dominick's parking lot and participated in the narcotics transactions of April 13 and May 4, 1989.[5]

Ashimi's testimony about the passport indicates that the document was stamped "Admitted" next to the date March 13, 1989. Ashimi also testified that the document was stamped on April 4, 1989, and that this stamp indicated his arrival in Nigeria. Ashimi then pointed out that the document was stamped "Admitted" next to the date August 12, 1989, and testified that this stamp indicated his subsequent return to the United States. After the passport was admitted into evidence, further references on the record indicate that the passport also contained stamps revealing that the holder left Nigeria in August 1987, September 1987, and November 1988 but did not contain corresponding indications of entry.

Ashimi explained his presence at Dominick's on August 18 by reference to his relationship with Tucson, who he had first met in 1985. Ashimi testified that Tucson borrowed a sum of money in March 1989[6] and offered some jewelry in exchange (ostensibly as collateral). In August 1989, Tucson contacted him and requested the jewelry but was apparently unwilling or unable to pay back the loan. And when Ashimi refused to return the jewelry until he was repaid,[7] Tucson threatened to "get even." As a consequence of this threat, Ashimi agreed to meet Tucson at the Dominick's parking lot on August 18, 1989, where he encountered Officer Holliday and was subsequently arrested.

During closing arguments, Ashimi's counsel once again raised the matter of Tucson:

> MR. SEIDEN: What obviously happened here, Judge, is that Tucson, whoever he might have been, an individual I will never get an opportunity to talk to....
>
> MS. DAVIS: Judge, I'm going to object to that. Mr. Seiden had plenty of opportunity. You set this case a week ago. I talked to Mr. Seiden's office every day.
>
> MR. SEIDEN: May I continue?
>
> THE COURT: You can make those arguments.
>
> MS. DAVIS: He never made a request for the information.
>
> THE COURT: You may make those arguments in your rebuttal.
>
> MR. SEIDEN: Tucson ... who he is, we will never know, because I asked his name today, and I was earnestly determined to find out.
>
> ....

**3.** Ashimi testified that our government would not release his passport.

**4.** This document, according to Ashimi's testimony, allowed him unlimited entry to the United States for the duration of one year. He also testified that, despite this apparent ability to enter the country at will, ports of entry continued to limit the length of his stay.

**5.** Ashimi's trial counsel does not appear to have provided a notice of alibi to the government. The government, however, did not take issue

with the failure and Ashimi suffered no adverse consequences as a result of the omission. *Compare United States v. Hamblin,* 911 F.2d 551, 556 (11th Cir.1990).

**6.** Ashimi testified that Tucson introduced him to Officer Holliday during this period, but Holliday flatly denied this assertion when he was called as a rebuttal witness.

**7.** Ashimi maintained that his wife possessed the jewelry.

The plain and simple truth is that this man, whoever he might be, Tucson, Phoenix, or whatever his last name is, got paid for information and is able to hide behind a cloak, and we have no idea what this man's motives were for what he did, whether it was money, anger, revenge or whatever.

The court thereafter determined that the passport stamps could be explained away, that the government's evidence was credible, and that Ashimi's testimony was not credible. It found Ashimi guilty on both counts.

After trial, Ashimi's counsel filed an initial post-trial motion on October 5, 1989, and on October 23 filed a "Supplement and Appendex [sic] to Post Trial Motion" containing documents offered to support the proposition that Ashimi was not in the country during the time in question. These documents included: (1) an airline ticket issued on April 11, 1989, in the name of Segun Ashimi for travel within Nigeria on Nigeria Airways; (2) a bill to Ashimi for lodging for April 11–17, 1989, from the Hamdale Hotel Kadema; (3) a contract entered into by Ashimi in Nigeria on May 10, 1989; and (4) a receipt, dated May 19, 1989, for rent received from Ashimi for housing in Nigeria during the period from May through August 1989 (the parties refer to these as the "Nigerian documents"). The district court rejected this evidence because the motion offered no explanation for failing to produce the documents at trial and because the documents did not contradict the testimony of the government's witnesses.

## II.

Ashimi initially attempts to remove his appeal from the standard effective assistance analysis by arguing that "[t]he impermissible pitting of [his] concurrent sixth amendment rights to a speedy trial and effective assistance of counsel resulted in a tainted trial." Ashimi's arraignment, we are told, presented a "Hobson's choice." If Ashimi took advantage of his right to a "speedy" trial (which he defines as the ability to waive 18 U.S.C. § 3161(c)(2) and proceed to trial in less than thirty days), then his counsel would be unable to conduct adequate pretrial investigation. The extra time required for adequate investigation, on the other hand, could come only at the expense of Ashimi's right to a "speedy" trial and his continued detention during that extended period.

Thus, Ashimi maintains that he could not have both effective assistance *and* a "speedy" trial. One right would have to be foregone in order to achieve the other; here, effective assistance was sacrificed for the sake of a "speedy" trial. This choice, he now [8] argues, falls within the doctrine of "unconstitutional conditions" announced in *Simmons v. United States*, 390 U.S. 377, 393–94, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). That doctrine prohibits the government from coercing a defendant into foregoing one protected constitutional right in order to receive another one. *See United States v. Ryan*, 810 F.2d 650, 656 (7th Cir.1987).

Even if we accept as true Ashimi's claim that he actually waived the thirty-day requirement of section 3161(c)(2),[9] a number of fatal deficiencies still beset his argument. For example, we are unable to accept Ashimi's assumption that the sixth amendment confers upon him the right to proceed to trial in less than thirty days. That right, to the extent it exists at all, derives from the Speedy Trial Act and not the Constitution.[10] *Simmons* does not ap-

---

8. The government has not addressed the consequence, if any, of Ashimi's failure to raise this issue before the district court. It has therefore waived any objections to the timeliness of the argument. *See Garlington v. O'Leary*, 879 F.2d 277, 282–83 (7th Cir.1989).

9. This claim is of doubtful merit. *See supra* note 2.

10. *Cf. Word v. United States*, 616 F.Supp. 695, 698–99 (S.D.N.Y.1985) (violation of section 3161(c)(2) is not violation of sixth amendment), *aff'd without opinion*, 795 F.2d 1006 (2d Cir. 1986); *see United States v. Rojas–Contreras*, 474 U.S. 231, 235–36, 106 S.Ct. 555, 557–58, 88 L.Ed.2d 537 (1985) (section 3161(c)(2) originated from guidelines used by trial judges sitting in Second Circuit).

ply, however, when a defendant is made to choose between a constitutional benefit and a statutory benefit. *See United States v. McClellan*, 868 F.2d 210, 215 (7th Cir.1989); *see also United States v. Wilks*, 629 F.2d 669, 672 (10th Cir.1980).

We are also unable to accept Ashimi's assumption that the right to a speedy trial and the right to effective assistance are mutually exclusive. We do not deny that adequate pretrial investigation takes some time and thereby raises the possibility that the trial date might be delayed. This delay, however, merely results in a trial that is less speedy. It does not preclude the possibility that the trial can satisfy the sixth amendment (which, after all, guarantees only a *speedy* trial, not the *speedier* or the *speediest* trial). Accordingly, we analyze Ashimi's claims under the now-familiar test laid out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### III.

No one disputes the proposition that adequate pretrial investigation is essential to the proper representation of a criminal defendant. The challenge, of course, is to determine how much investigation is adequate. And that determination, like so many other decisions that an attorney must make, is a matter of professional judgment. *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir.1991).

In applying *Strickland*, therefore, we must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.1990). It is not our task to "call the plays" as we think they should have been called. *Id.* On the contrary, we must seek to "evaluate the conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable profes-

sional assistance." *Id.* That presumption may be overcome, but only by a showing that: (1) the performance of Ashimi's trial counsel fell below an objective standard of reasonableness; and (2) this performance prejudiced Ashimi's defense. *See United States v. Muehlbauer*, 892 F.2d 664, 668 (7th Cir.1990); *see also Strickland*, 466 U.S. at 690, 694, 104 S.Ct. at 2066, 2068.

To complicate matters, Ashimi makes his claim on direct appeal and, therefore, without benefit of a hearing on this issue. At the very least, then, he faces even more of an uphill fight. As a court of appeals does not hear evidence, our only source of information is the trial record. "[E]very indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir.1991); *see also Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Ashimi nevertheless urges a resolution of his claim,[11] portraying his counsel as plunging hastily to trial and then, once that day arrived, finding himself woefully unprepared. The record, he argues, supports this depiction in that it manifests his trial counsel's failure to conduct any pretrial investigation. This "failure," in turn, allegedly satisfies the elements of the *Strickland* test.

We disagree. To begin, Ashimi's characterization of pretrial investigation is, at best, overly pessimistic. Granted, no formal discovery motions appear in the record, and the assistant United States attorney stated, without contradiction, that Ashimi's trial counsel had never asked for either Tucson's identity or his whereabouts. That is all, however, that the record discloses with respect to pretrial discovery. The record does not speak to the extent, if any, of informal discovery that Seiden may have sought from the United States Attorney's office,[12] nor does it speak to the extent, if

---

**11.** This position appears motivated at least in part by a fear that he might otherwise lose the ability to raise the matter in a post-conviction proceeding. *Taglia*, 922 F.2d at 418; *United*

*States v. Phillips*, 914 F.2d 835, 846 (7th Cir. 1990).

**12.** Indeed, the fact that Davis talked to Seiden's office "every day" during the week before trial

any, of attempts to tap sources outside of the United States Attorney's office, and a blank record cuts in favor of, not against, effective assistance. *United States v. Weaver*, 882 F.2d 1128, 1138 (7th Cir.), *cert. denied sub nom. Schmanke v. United States*, — U.S. ——, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989).

 But even if true, assertions of inadequate investigation cannot satisfy the *Strickland* test unless we can also conclude that the defendant was prejudiced. In order to make that determination, however, we must know what the attorney would have discovered after "adequate" investigation.[13] Here, Ashimi asserts that two things would have occurred. First, his trial counsel would have discovered and offered the Nigerian documents. Second, his trial counsel would have discovered the identity and whereabouts of Tucson and would have called Tucson as a witness to corroborate Ashimi's testimony about the loan.

 As to the Nigerian documents, we cannot say that Ashimi has established prejudice—i.e., that "there is a reasonable probability that, but for counsel's ... [failure to produce the documents at trial], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Even if we take these documents at face value (as opposed to the seemingly more appropriate category of hearsay with no visible indicia of reliability) and assume that they would have been available for trial (although there is no evidence in the record to that effect),[14] not one of the Nigerian documents establishes that Ashimi was out of the country on either April 13 or May 4, 1989.[15] "Alibi" evidence is unlikely to affect a trial if it does not account for the defendant's presence at the time of the crime,[16] and the inability to establish prejudice is fatal to the first portion of Ashimi's claim. *See Chichakly v. United States*, 926 F.2d 624, 630–31 (7th Cir.1991).

 All that remains is Seiden's failure to ask the government about Tucson. Had Tucson been identified and called as a witness, Ashimi argues only that the testimony would have provided corroboration for and "fleshed out" the story about the loan.[17] This information was already available and presented at trial, however. Ashimi's own testimony recounted the jewelry transaction.

In light of the manner in which Ashimi's argument is presented, the suggested pre-

---

tends to suggest that Seiden was receiving information from the government.

**13.** *Muehlbauer*, 892 F.2d at 669 (defendant must identify specific acts or omissions that gave rise to prejudice); *Weaver*, 882 F.2d at 1138–39 (same).

**14.** *See Muehlbauer*, 892 F.2d at 669.

**15.** The district court also displayed an unwillingness to be swayed by the Nigerian documents:

[T]he documents which Ashimi has now presented to the court would not lead to an acquittal in the event of a retrial.... [N]one of the documents establish that he was out of the country on April 13 or May 4, 1989, the dates which the agents testified he sold heroin. The receipt for rent is dated May 19, 1989. The contract is dated May 10, 1989. The airline ticket was merely issued in Ashimi's name on April 11, 1989. The ticket does not set out the dates for travel; nor does it establish that Ashimi personally purchased the ticket in Nigeria or that he ever used the ticket. Similarly, the hotel bill does not establish that Ashimi was actually in Nigeria on the

date of the drug transactions. In sum, each of these documents, especially when viewed in light of the clear testimony of the government witnesses, is insufficient to create a reasonable doubt as to whether Ashimi was in the United States on the date the drug transactions occurred.

It is certainly important, although not conclusive, that the judge making this observation also served as the finder of fact in Ashimi's trial.

**16.** *Cf. Hamblin*, 911 F.2d at 556 (failure to present alibi defense not prejudicial when alibi did not account for defendant's presence at time of crime); *Williams v. Weldon*, 826 F.2d 1018, 1022–23 (11th Cir.1987) (same), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1231, 99 L.Ed.2d 431 (1988).

**17.** Ashimi has gone so far as to assert that Tucson is the only witness who could have corroborated the story about the loan, but this assertion appears to be contradicted by the record. Ashimi's own testimony reveals that his wife was in possession of Tucson's jewelry, thus giving rise to the possibility that she might have corroborated his testimony, at least to a certain extent.

trial investigation would have produced primarily cumulative, not new, testimony. Indeed, the only new information that "adequate" investigation would have provided was the identity and whereabouts of the confidential informant, which would have served no real purpose other than to allow him to be subpoenaed as a witness. This case is therefore more analogous to those cases in which a defendant alleges that counsel was ineffective for failing to call a potentially favorable witness. *See, e.g., Sullivan v. Fairman,* 819 F.2d 1382 (7th Cir.1987); *see also United States ex rel. Partee v. Lane,* 926 F.2d 694 (7th Cir.1991).

■ Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.[18] A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.[19] Nevertheless, even if we accepted as true Ashimi's representation as to what Tucson would have said, we would still be unable to hold that Ashimi did not receive effective legal assistance.

This inability derives from our failure to understand how the touted testimony could have affected the outcome of Ashimi's trial. Tucson's corroboration of the jewelry story might have lent some credence to Ashimi's explanation of how he came to be at the Dominick's parking lot on August 18, but in that sense it is merely cumulative, *Weaver,* 882 F.2d at 1139, and, in any event, leaves unshaken the foundation of the government's case—the face-to-face narcotics transactions on April 13 and May 4.[20] The scenario with the jewelry simply does not contradict the testimony of Officers Holliday and Montgomery that Ashimi appeared not once, but twice, in a Dominick's parking lot and sold to Holliday substances that later tested positive for heroin. Nor does it contradict the testimony that Ashimi appeared at that same Dominick's parking lot on August 18, 1989, in an automobile that matched the vehicle description from the two prior occasions.[21] And the failure to demonstrate prejudice is once again fatal. *See Chichakly,* 926 F.2d at 630–31.

## IV.

With his client detained pending trial, Ashimi's counsel pushed for quick resolution and relied heavily on the dates stamped in the Nigerian passport. In hindsight, that reliance may have been misplaced—the district court explained away the passport stamps and Ashimi was convicted. We cannot conclude, however, that this reliance made counsel's assistance ineffective, especially in light of Ashimi's inability on this record to demonstrate any prejudice from that reliance. Had Ashimi's counsel tried this case to the court the way Ashimi now says it should have been done,

18. *See Brown v. McGinnis,* 922 F.2d 425, 428 (7th Cir.1991) (citing *Sullivan,* 819 F.2d 1382); *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1133–34 (7th Cir.1990).

19. *Muehlbauer,* 892 F.2d at 669 (absent indication of what putative witness's testimony might have been, court attributes counsel's failure to call witness to routine trial tactics). Our skepticism is further increased by the knowledge that Tucson's corroboration of Ashimi's testimony about the jewelry would not preclude Tucson from corroborating the government's evidence as well; Tucson might have been a third witness to place Ashimi in the Dominick's parking lot on April 13, 1989. As such, the potential benefit from calling Tucson might be outweighed by the potential damage that Tucson's testimony could have caused, and we cannot fault an attorney for failing to call a potentially damaging witness. *United States v. Ramos,* 832 F.2d 85, 87–

88 (7th Cir.1987). We would also note that the government's failure to call Tucson as a witness does not permit us to infer that the testimony would have been unfavorable to the government. *Muehlbauer,* 892 F.2d at 669.

20. *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 956–57 (7th Cir.1986) (failure to investigate whereabouts of potential witness did not prejudice outcome of case because putative witness's testimony would not have contradicted testimony of government witnesses).

21. At oral argument, Ashimi suggested that the decision to "waive" the "30–day requirement" might have itself constituted ineffective assistance. It is unnecessary for us to comment on this argument, however, beyond the observation that Ashimi waived it by failing to raise it in his brief before this court.

there is not the slightest indication that the result would have been other than a finding of guilty.[22] Ashimi's conviction is therefore

AFFIRMED.

---

22. As we find that no prejudice resulted from the alleged errors, it is not necessary to remand this case to the district court for further hearings. *See United States v. Asubonteng,* 895 F.2d 424, 428–29 (7th Cir.) (citing *United States v. Fisher,* 772 F.2d 371, 373 (7th Cir.1985)), *cert.* *denied sub nom. Rivers v. United States,* —— U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). Ashimi may attempt to raise any additional matters on a section 2255 motion if he so chooses. *See Phillips,* 914 F.2d at 846.