IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 16, 2003

## DAVID FRANKLIN FORRESTER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Humphreys County**
**No. 8905      Robert E. Burch, Judge**

---

**No. M2002-01942-CCA-R3-PC - Filed September 2, 2003**

---

The petitioner appeals the denial of his petition for post-conviction relief from his conviction for aggravated sexual battery. He argues that he was denied the effective assistance of counsel because his divorce attorney, who thereafter became his initial trial attorney, failed to attend a polygraph examination and advise petitioner of the protocol, limitations, and requirements necessary to complete the examination. The petitioner further asserts that he was denied effective assistance of counsel by his second trial attorney because this attorney was unprepared to argue a motion to suppress and failed to adequately investigate factual allegations, review juvenile court records, call critical witnesses, pursue leads that would have established a conspiracy by the petitioner's wife to wrongfully prosecute him, and let the petitioner review the brief filed on direct appeal. Based upon our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

William B. Lockert, III, District Public Defender; and Richard D. Taylor, Jr., Assistant District Public Defender, for the appellant, David Franklin Forrester.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Lisa C. Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On August 28, 1997, the petitioner was convicted of aggravated sexual battery and, on December 9, 1997, sentenced to ten years. His conviction and sentence were affirmed by this court

on direct appeal.  See State v. David J. Forrester, No. 01C01-9801-CC-00031, 1999 WL 270348, at *1 (Tenn. Crim. App. Apr. 29, 1999).

At the petitioner's trial, Sharon Stump testified that she had a flat tire on September 14, 1996, and walked to the petitioner's home to use the telephone.  When Stump approached the back door of the home, she observed the petitioner rubbing his penis on the buttocks of his naked four-year-old daughter.  Stump reported this incident to the Department of Human Services ("DHS") and to the petitioner's wife.  Id.

Sometime that month, the petitioner filed for a divorce from his wife.  In October of 1996, a pendente lite hearing for this action was held at which time the petitioner informed his divorce attorney that he wanted to take a polygraph examination to prove that he did not commit the alleged sexual abuse.  The petitioner's divorce attorney informed the petitioner that, in his opinion, it was virtually impossible to pass a polygraph and that he had been told by a former district attorney that he did not have any confidence in polygraph examinations.  Despite these statements, the petitioner proceeded to set up a polygraph examination with Ted Tarpley, an investigator with the district attorney general's office.[1]

On November 20, 1996, the petitioner voluntarily appeared to take a polygraph examination administered by Special Agent Michael Smith of the Tennessee Bureau of Investigation.  Prior to taking the polygraph, the petitioner was administered his Miranda warnings and told that he was free to leave at any time.  See id. at **2-3.  Once the polygraph examination was complete, the parties took a short break, and then the petitioner engaged in a post-test interview.  Id. at *3.  During this interview, the petitioner signed a confession which was ultimately admitted into evidence at trial. Id.

The petitioner filed a *pro se* petition for post-conviction relief on April 19, 2000.  Counsel was appointed and amended petitions were filed on September 5, 2000, and October 4, 2000.  A post-conviction hearing was held on April 8, 2002, in which the post-conviction court denied the petitioner's request for relief.

At this hearing, the petitioner called TBI Agent Smith to testify.  Smith said that, upon determining that the petitioner's polygraph results were "deceptive," he conducted a post-polygraph interview of the petitioner during which he confessed.  Smith further stated that the petitioner did not have counsel present when the polygraph was administered or during the post-polygraph phase, saying it was his "understanding there wasn't a criminal attorney on the case."  Smith understood that, at the time he administered the polygraph, the matter was "at the investigative stage."

---

[1]We are aware that a panel of this court on direct appeal found that the petitioner's divorce attorney set up the polygraph examination for the petitioner, a finding which the post-conviction court in this matter determined to be dicta. However, upon reviewing both the trial transcript and post-conviction hearing transcript, we conclude that it was in fact the petitioner who set up the polygraph examination.

The defendant called his divorce and initial trial attorney to testify. Counsel stated that on the morning of the pendente lite hearing, the petitioner told him that he wished to take a polygraph examination to clear up the allegation that he sexually abused his daughter. Counsel testified:

> Q. What conversations did you have with [the petitioner] before the polygraph examination was conducted?
>
> A. The – The morning of the pendente lite hearing, I met with [the petitioner] and his parents . . . . And they were insistent that he take a polygraph and told me that they had been talking with Ted Tarpley about taking a polygraph. And they were just – They just really wanted to get that accomplished. And he kept insisting that that would clear him.
>
> And the only – I – I had two (2) comments to him about that. One (1) was, you can't beat them. Basically, I told him I didn't think he could beat a polygraph, if you – And, secondly, I made reference to a comment that had been made to me by Kenneth Atkins [a former district attorney] when I had tried to get him to polygraph this other client of mine about a matter – Basically, he was saying he didn't put any stock into polygraphs. He didn't feel like they had any value.
>
> And those are the – I think that's the only thing I ever said to him about it.
>
> Q. Did [the petitioner] express his intention to go forth with the polygraph examination, despite –
>
> A. Well –
>
> Q. – these comments?
>
> A. I don't know. I just know they wanted to take one. And the way it came about was that when he was testifying in the pendente lite hearing, he kept referring – making comments to questions that he wanted to take a polygraph and he couldn't get a polygraph taken. He – He just wanted a polygraph.
>
> And Judge Wallace said to him, Ted Tarpley is sitting right back there in the back of the courtroom and I'm sure he will accommodate you, if you want a polygraph.
>
> And he said, I want a polygraph.

And Judge Wallace, said, well, when this matter is over, you get with him and I'm sure he will give you one.

And that's, basically, what happened, how it went down.

Counsel said that no charges were pending against the petitioner at the time of the polygraph.

The petitioner called Clifford K. McGowan, Jr., a licensed attorney since 1983, to testify as to the standard of care that an attorney should exercise in a case similar to the present one. McGowan testified, *inter alia*, that he would use civil discovery to aid him in obtaining information in the criminal case and would obtain a copy of all Department of Children's Services' records. He also said that an attorney representing a criminal defendant in a child sexual abuse case should interview all witnesses as soon as possible. McGowan further stated that he would never allow a client to take a polygraph examination with the TBI without first having one conducted by a private polygraph examiner to ensure that the client could pass the examination, and that he would attend the polygraph examination with the client, ask the polygraph examiner what type of questions would be asked during the examination, and make sure that his client did not participate in a post-polygraph interview.

In response to a question about how to manage a client, McGowan said the following:

I have had clients who are so self-destructive that I cannot effectively represent them. And I've moved to withdraw.

If it is a criminal case, they don't let me out, even though I want to real badly. Then, I write a letter to the client – no, I – I've done that ahead of time – saying that – I call it my you're a dumb ass letter.

And what I do is I – I tell people when they come in to see me, I said, now, look, lots of things are going on. You know, this is your case, I am your lawyer. I work for you just like I'm a mechanic working on your car. As long as you tell the truth to me and tell the truth to the court, we're going to get along fine. There are some things that we will talk about and decide together. I don't want you going off and making decisions on your own. Somewhere in that initial discussion when I'm retained, I say, look, if you're dead set on doing something that I think is stupid, I'm going to send you a letter. In that letter, my – I call it my you're a dumb ass letter. And I hope you never get one, but if you do, I want you to remember this conversation. Because I'm so convinced that you are acting against your own interests that when this case goes down the tubes, I'm going to wave this letter at you as – if it's a criminal case – as they haul you to jail.

-4-

Second trial counsel, a licensed attorney since 1985 or 1986, testified that while he could not remember exactly when he was retained to represent the petitioner, his first contact with the petitioner was on February 5, 1997. Counsel spoke to first trial counsel "once or twice, maybe" and learned that first trial counsel only had a domestic file on the petitioner. Second trial counsel reviewed the petitioner's chancery court divorce file prior to his criminal trial. When asked if he had reviewed the juvenile court records pertaining to the petitioner's case, second trial counsel replied: "I would state that if there was a juvenile file – which I assume, under dependency and neglect or something of that nature, . . . I would have looked at it."

Second trial counsel said he tried to interview Sharon Stump, the eyewitness to the incident who was also a friend of the petitioner's wife, but Ms. Stump did not want to speak to him. Counsel did not interview the petitioner's son because of his young age; the son was in another room watching television when the incident occurred; and "[t]here was some hearsay that came in that was not objected to by the State."

Second trial counsel said that he filed a motion to suppress the petitioner's statement, which he argued before the trial court on August 25, 1997. When asked what he had done to prepare for the motion to suppress, second trial counsel testified:

> I interviewed with [the petitioner], his parents. I believe we may have obtained some information from his doctor, out of Dickson; obtained the . . . post-polygraph interview statement from the DA's office; research, as it relates to the question, particularly as to [the petitioner] wanting or requesting an attorney; also as to whether [the petitioner] was . . . under arrest or in custodial care at that time. Because at the time the . . . polygraph was given, . . . I'm wanting to think that he had not been arrested, at that point, nor had he been indicted at that point. So, there was certain elements that we had . . . to see whether the Miranda warnings and things of that nature were applicable.

Second trial counsel said that the hearing on the motion to suppress was "fairly lengthy" and that several witnesses, including the petitioner, had testified.

After the petitioner's case "had gone through the appellate process," second trial counsel gave his original file on the case to the petitioner's mother or father sometime "[a]fter '97" and had that parent sign a receipt for the file. Counsel said he did not make a copy of the file before giving it to the petitioner's parent but made a "skeleton file," which contained his "handwritten notes and things of that nature." Counsel said he had been unable to locate the receipt signed by the petitioner's parent or his "skeleton file." He did not keep time records on the petitioner's case because he charged a "flat fee."

On cross-examination, second trial counsel acknowledged that he had prepared an order substituting counsel and that the date on that document is June 24, 1997.[2] Second trial counsel said that he was not aware of any exculpatory witnesses that he did not interview and that several of the witnesses who testified on the petitioner's behalf either provided the same testimony as another witness or were hostile.

Don Forrester, the petitioner's father, testified that second trial counsel never gave him or his wife the petitioner's file. Forrester believed his first payment to second trial counsel toward his retainer was made in June 1997 and the second payment was made in July. He said that the petitioner had hired first trial counsel and that he and his wife had paid second trial counsel's fee. Forrester acknowledged that he and his wife, along with the petitioner, met with Clifford McGowan about a week before they met with second trial counsel. Forrester recalled speaking to first trial counsel sometime after the petitioner's child custody hearing about the petitioner's criminal case. He told first trial counsel that they were interested in making "some arrangements with him," but they "never got as far in the conversation that [they] talked about money." Thereafter, the petitioner tried to get an appointment with first trial counsel but was unsuccessful.

George Sexton, a Stewart County General Sessions and Juvenile Court judge at the time of the post-conviction hearing, testified that he was a former assistant district attorney general and was the prosecutor at the petitioner's trial. According to Sexton, the proof that his office had against the petitioner was "[o]verwhelming," and the petitioner's case was "about as strong a case as you get for child sexual abuse prosecution."

Sexton said that he "had been told that [first trial counsel] was representing [the petitioner] in a . . . divorce proceeding," but it was his understanding that first trial counsel was not representing the petitioner "as far as any criminal proceedings were concerned." Second trial counsel was the only attorney with whom Sexton had any contact on the petitioner's case. Sexton could not recall exactly when second trial counsel became involved with the petitioner's case but said "it was sometime after the indictment was handed down." Sexton said that second trial counsel filed discovery, as well as a motion to suppress the petitioner's statement, and "did everything that I thought . . . an attorney should and normally would do." Describing second trial counsel's performance at trial, Sexton testified:

> I thought he did a really good job. He cross examined all of the witnesses. He tried to discredit the eyewitness in the case. He came up with what I thought was a reasonable theory as to why . . . the eyewitness would have a motive to fabricate her testimony. He came up with a theory of something about her having a flat tire and she

---

[2]A copy of the "Order Substituting Counsel," bearing the signatures of first trial counsel and second trial counsel, as well as the date of June 24, 1997, in the certificate of service, is included in the record before this court. However, that copy does not bear the signature of the trial judge or a stamped file date by the trial court clerk's office. Therefore, it is unclear as to when the order was actually entered by the trial court.

couldn't even have been there to have seen this at the time that this crime occurred.

# ANALYSIS

## I. Ineffective Assistance of Counsel

The petitioner argues that his conviction should be reversed because both his first and second trial counsel's performances were deficient such that they fell below the reasonable standard of care and ultimately prejudiced him at trial. Specifically, the petitioner argues that his first trial counsel was deficient because he failed to attend his polygraph examination and failed to advise him of the protocol, limitations on the admissibility of the results, and the requirements necessary to complete the examination. The petitioner further asserts that his second trial counsel was also ineffective because he (1) was unprepared to argue a motion to suppress the confession made during the post-polygraph phase; (2) failed to adequately investigate factual allegations made against the petitioner; (3) failed to review juvenile court records; (4) failed to call critical witnesses to impeach the credibility of the State's eyewitness; (5) did not attempt to locate pornographic materials that would have demonstrated a conspiracy to wrongfully prosecute the petitioner; and (6) filed an appellate brief without consulting the petitioner.

## A. Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the trial court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable

professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

## B. First Trial Counsel

Before determining whether first trial counsel's assistance was ineffective, we must first determine the scope of his representation of the petitioner. The petitioner asserts that first trial counsel provided him with ineffective assistance under the Sixth Amendment. Thus, by implication, the petitioner argues that first trial counsel was his attorney for the criminal proceedings at the time he took the polygraph examination. First trial counsel testified that he was never retained as counsel for the criminal proceeding but was merely retained to represent the petitioner for the divorce and child custody proceedings.

If first trial counsel was the petitioner's criminal attorney at the time of the polygraph examination, then the petitioner was denied the effective assistance of counsel. In Sepulveda v. State, 90 S.W.3d 633, 637 (Tenn. 2002), our supreme court held that "sending 'his client off to take a polygraph exam without going with him' fell below the standard of effective representation required by the Sixth Amendment." However, if first trial counsel was merely the petitioner's divorce counsel, there was no Sixth Amendment violation, as an accused is only entitled to effective assistance of counsel in criminal trials.

The petitioner hired first trial counsel to represent him in his divorce proceeding in September 1996. First trial counsel testified, "I was never hired to represent [the petitioner] in the criminal case," and denied having any discussions with the petitioner about representing him in his criminal case. Subsequently, first trial counsel was in the courthouse on another matter when he noticed the petitioner was there for an arraignment. At that time, first trial counsel entered a plea of not guilty for the petitioner and was made the attorney of record for the pending criminal charge.

First trial counsel further testified that it was the petitioner who insisted on taking the polygraph examination and who made arrangements for it with Ted Tarpley. As such, the post-conviction court found:

> The fact is that there is no proof in the record which establishes that [first trial counsel] undertook to advise Petitioner concerning the criminal matter nor was he in a position that he would reasonably have been expected to do so. The proof establishes that Petitioner sought the polygraph examination on his own initiative without conferring with [first trial counsel]. He [petitioner] cannot now reasonably complain about the consequences thereof.

Since the petitioner did not testify at the post-conviction hearing, there is no evidence in the record to rebut first trial counsel's assertion that he was not retained for the criminal case. Despite

this fact, first trial counsel still acquired an obligation to protect the interests of his client the moment he entered a not guilty plea for the petitioner at his arraignment and became the attorney of record. This obligation, however, did not extend retrospectively, attaching to first trial counsel's conduct as a divorce attorney, thereby making him liable for what might constitute ineffective assistance of counsel in a criminal matter. See Sepulveda, 90 S.W.3d at 637. Any obligations that first trial counsel assumed as the petitioner's defense attorney arose when counsel entered a not guilty plea for the petitioner and continued until the order allowing substitution of counsel was approved by the trial court. Therefore, first trial counsel's conduct prior to becoming the attorney for record in the criminal matter cannot be said to have been ineffective assistance of counsel under the Sixth Amendment because he was not the petitioner's counsel for the criminal case at the time the polygraph examination was administered.

### C. Second Trial Counsel

The petitioner also asserts that second trial counsel was ineffective. Specifically, he argues that counsel was unprepared to argue a motion to suppress the confession made during the post-polygraph phase and failed to adequately investigate factual allegations made against the petitioner, review juvenile court records, call critical witnesses to impeach the credibility of the State's eyewitness, attempt to locate pornographic materials that would have demonstrated a conspiracy to wrongfully prosecute the petitioner, and communicate with the petitioner while drafting his appellate brief.

A petitioner must put on proof of each of his assertions to satisfy the obligation that the allegations be proved by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f); Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, Hendricks cannot meet the prejudice prong of the Strickland test."); United States v. Ashimi, 932 F.2d 643, 649 (7th Cir. 1991) (stating that a petitioner cannot establish prejudice prong of ineffective assistance of counsel claim based on counsel's failure to investigate without showing "what the attorney would have discovered after 'adequate' investigation"); Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.").

One of the petitioner's witnesses at the post-conviction hearing testified as to what he, as an attorney, would have done in preparing to defend a client against the charge facing the petitioner. However, the petitioner did not present evidence to show how he would have benefitted if his second trial counsel had taken those actions which the petitioner claimed, in the post-conviction petition, that he should have. As to the claims that the petitioner's second trial counsel was ineffective, the post-conviction court found:

This Court presided at the hearing of the motion to suppress and at the trial and finds no factual support for these allegations [that trial counsel was unprepared for the motion to suppress]. Petitioner bears the burden of proving his allegations in a Post-Conviction proceeding. T.C.A. § 40-30-210(f). He has not done so. There is no merit to his allegation.

Next, Petitioner complains that [second trial counsel] did not call two witnesses: Sean Forrester, the minor son of Petitioner[,] and Lynn Massey. Neither of these witnesses testified at the hearing of the Post-Conviction Petition. Although there were some allegations concerning the expected testimony of these witnesses, there are no facts in the record from which this Court can determine the substance of what their testimony would have been. Petitioner has failed to demonstrate that the failure to call these witnesses prejudiced him in his trial. T.C.A. § 40-30-210(f).

Petitioner then alleges that the appellate brief filed by [second trial counsel] in the appeal of Petitioner's conviction was below the standard required of counsel in criminal cases. The brief was not presented into evidence at the hearing of Post-Conviction Petition. Petitioner's allegations are not supported by the proof. T.C.A. § 40-30-210(f).

Petitioner's next allegation is that [second trial counsel] "failed to subpoena and review records of the Juvenile Court proceedings that would have exonerated Petitioner." These records were not introduced into evidence and this Court has no idea what they contain nor how they could have benefitted Petitioner. Petitioner has the burden of proving his allegations. T.C.A. § 40-30-210(f). In this, he has failed. The allegation is without merit.

Lastly, Petitioner alleges that [second trial counsel] "failed to pursue evidence of pornography and documents pertaining to pursuing claims of child abuse in Petitioner's wife's possession." He submits that said material would constitute proof of a conspiracy by Julie Forrester (Petitioner's ex-wife) and Sharon Stump. Again, this material was not introduced into evidence nor were either of these individuals called to testimony [sic]. There is no proof in the record to substantiate Petitioner's allegations. He fails in his burden of proof. T.C.A. § 40-30-210(f).

In summary, Petitioner has failed to introduce any evidence establishing that [second trial counsel's] performance was below that expected of counsel in criminal cases. The Court observed no deficiencies in [second trial counsel's] performance either at the hearing of the motion to suppress or at the trial.

The record on appeal fully supports these findings.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE