IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 14, 2001

## MICHAEL RUSSO v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 97-B-995     Cheryl Blackburn, Judge**

_____

**No. M2000-00919-CCA-R3-PC - Filed June 5, 2001**

_____

The petitioner appeals the post-conviction court's denial of his petition for post-conviction relief, raising the sole issue of whether the post-conviction court erred in finding that he had effective assistance of counsel at trial. The petitioner was convicted by a jury of first degree murder for shooting his wife to death, and sentenced to life imprisonment. In his post-conviction petition, the petitioner asserted a number of grounds for relief, including ineffective assistance of counsel. The post-conviction court denied the petition, finding, with regards to the ineffective assistance of counsel claim, that many of the petitioner's allegations did not constitute a deficiency in counsel's performance, and further, that the petitioner had failed to meet his burden of showing that any of the alleged deficiencies of counsel prejudiced the outcome of his case. After a thorough review of the record, we reverse the judgment of the post-conviction court as to the effect of trial counsel's misplacing of photographs which were not located until after the trial and the post-conviction hearing and remand for an additional hearing. As to the other issues, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part and Reversed and Remanded in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Jesse N.H. Bacon, Madison, Tennessee, for the appellant, Michael Russo.

Paul G. Summers, Attorney General and Reporter; Glen C. Watson, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner appeals the denial of post-conviction relief on his conviction for first degree murder, raising the sole issue of whether the  post-conviction court erred in finding that he had

effective assistance of counsel at trial. On appeal, the petitioner presents four ways in which trial counsel was allegedly ineffective:

1. Counsel lost exculpatory evidence;

2. Counsel failed to have the knife used to cut the defendant tested for blood;

3. Counsel failed to object to the introduction at trial of a photograph of the victim after her death; and

4. Counsel failed to object to trial testimony about other bad acts of the petitioner.

Based upon our review of the record, we reverse the post-conviction court's denial of post-conviction relief for misplacing the photographs showing scratches to the petitioner's face (Issue 1) and remand for a further hearing. As to the other issues, we affirm the judgment of the post-conviction court.

## FACTS

On January 14, 1998, the petitioner, Michael Russo, was convicted by a jury of first degree premeditated murder for shooting his wife to death in the kitchen of their home, in front of the parties' teenage daughter.[1] Following a sentencing hearing, the petitioner received a sentence of life without parole. His conviction was affirmed on direct appeal to this court, and our supreme court denied his application for permission to appeal. See State v. Michael J. Russo, No. 01C01-9803-CR-00108, 1999 WL 135049 (Tenn. Crim. App. Mar. 15, 1999), perm. to appeal denied (Tenn. July 12, 1999).

On August 31, 1999, the petitioner filed a *pro se* petition for post-conviction relief. After the appointment of counsel, an amended petition was filed on November 29, 1999, alleging, *inter alia*, that the petitioner had received ineffective assistance of counsel at trial. The petitioner asserted that trial counsel was ineffective for failing to confer with the petitioner regarding all possible defense theories, for failing to preserve the petitioner's rights by timely objecting to evidence at trial or effectively cross-examining State witnesses, for failing to properly investigate, collect, and preserve evidence in the case, and for failing to prepare for the sentencing hearing. As a separate ground for relief, apart from his ineffective assistance of counsel claim, the petitioner alleged that he had been prejudiced by the trial court's allowance of testimony of his prior bad acts, in violation of Tennessee Rule of Evidence 404.

---

[1] The State indicates in its brief that the parties' daughter was fourteen at the time of the shooting. In its order denying relief, however, the post-conviction court states that the daughter was thirteen years old.

Evidence presented at the hearing on the post-conviction petition was that trial counsel had been licensed to practice law in Tennessee since 1989, and that a great deal of his practice consisted of criminal defense work. Trial counsel said that the petitioner's case had not been his first jury trial; he had participated in twenty-one criminal trials in the past five years, including two capital murder cases. Trial counsel testified that on the Monday morning following the Saturday evening murder, he had been interrupted at work by an emergency phone call from the petitioner, who informed him that he had shot his wife. He and the petitioner discussed the case at length, both during that initial telephone conversation, and during subsequent phone conversations that took place before the petitioner agreed to turn himself in to the police. Immediately after the petitioner had turned himself in, trial counsel met with him to begin to discuss his defense. They talked about the different offenses of which the petitioner could be convicted, the possible penalties that he faced, and the feasibility of presenting his case as either an accidental shooting or as self-defense.

Trial counsel explained his reasons for not cross-examining a State witness, and for not extensively cross-examining others, and testified that he considered his decisions to have been trial tactics, based on experience gained in the practice of criminal law.[2] He admitted that he had misplaced photographs that showed superficial scratch marks on the petitioner's face,[3] and acknowledged that the photographs could have corroborated the petitioner's testimony that his wife had attacked him with a steak knife, and that he had pulled the gun in self-defense. Trial counsel also admitted that he had not had the steak knife tested for the presence of the petitioner's blood, and that he may not have objected to the introduction of a photograph of the victim's body. He said, however, that he did not feel "it was objectionable to get one picture in of [the victim] after the homicide." Trial counsel readily acknowledged that he had not put as much effort into the sentencing hearing as he had into the trial. He explained that it had not been a death penalty case, and that, after consultation with the petitioner, he had decided that their limited resources would be best spent if they concentrated on the trial rather than on the sentencing hearing.

The petitioner contradicted much of trial counsel's testimony regarding counsel's preparation for trial, and level of consultation with the petitioner. However, the petitioner also contradicted his own testimony, initially claiming that trial counsel had "never talked about a defense" with him, but later saying that trial counsel had met with him in person "about five times" prior to trial, and that they had discussed the possibility of presenting the shooting as a case of self-defense. The petitioner claimed that trial counsel had never discussed the sentencing hearing with him, and said that he had been unaware that he had had the right to present witnesses.

---

[2] His treatment of this witness had been raised as an issue in the petition for post-conviction relief but is not an issue on appeal.

[3] After the post-conviction court had ruled adversely to the petitioner and notice of appeal had been filed, two of the missing photographs were located, and post-conviction counsel, by motion to the post-conviction court to supplement the record, succeeded in having these photographs included within the appellate record. This procedure, although successful in having the photographs included within the record on appeal, did not comply with the Tennessee Rules of Appellate Procedure. Thus, these photographs are not properly before this court.

At the conclusion of the hearing, the post-conviction court denied the petitioner relief, issuing its written findings of fact and conclusions of law. With regard to the petitioner's claim of ineffective assistance of counsel, the court found that he had failed to meet his burden of showing that he had been prejudiced by any alleged deficiencies in counsel's performance. The post-conviction court dismissed the petitioner's claim based on the trial court's allowance of testimony of his prior bad acts, finding that it was not a proper issue for post-conviction relief because it did not involve any abridgement of the petitioner's constitutional rights. The court further found that even if the issue had been proper, the petitioner had waived it by failing to raise it at trial or on direct appeal.

## ANALYSIS

The petitioner argues that the post-conviction court erred in finding that he had effective assistance of counsel. Although the petitioner offered a number of alleged instances of ineffective assistance in his petition to the post-conviction court, he limited his claims on appeal to arguing that trial counsel provided ineffective assistance by losing the photographs showing the cuts on his face, failing to have the steak knife tested for the presence of his blood, failing to object to the introduction of the photograph of the victim's body, and failing to prepare for the petitioner's sentencing hearing. On appeal, the petitioner additionally alleges, for the first time, that trial counsel provided ineffective assistance by failing to object to testimony of the petitioner's prior bad acts.

The State argues that the post-conviction court did not err in finding that the petitioner failed to demonstrate ineffective assistance of counsel. The State contends that: neither the loss of the photographs nor the failure to have the steak knife tested was prejudicial to the outcome of the trial; trial counsel was not deficient for failing to object to the introduction of the photograph of the victim's body; the petitioner failed to present any evidence to show that trial counsel's alleged deficiency in preparation for the sentencing hearing prejudiced him to the extent that he was denied the effective representation of counsel; and the petitioner waived any objection to trial counsel's failure to object to testimony of prior bad acts by his failure to raise the issue before the post-conviction court.

The petition for post-conviction relief is governed by the Post-Conviction Act of 1995, which provides that the petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The standard of review which we apply to this matter is set out in Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001):

> The standard of appellate review applied to ineffective assistance claims has always been that a trial court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Under this standard, appellate courts do not reweigh or reevaluate the evidence or substitute their own inferences for those drawn by the

-4-

trial court. Henley, 960 S.W.2d at 579. Furthermore, questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Id.

The standard for showing a claim of ineffective assistance of counsel is well-established. To prove ineffective assistance of counsel at trial, the petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of his case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997), perm. to appeal denied (Tenn. 1998) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). This is a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that counsel's actions or decisions "f[e]ll below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). Courts, therefore, need not approach the test in a specific order, or even "address both components of the inquiry if the petitioner makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (Tenn. 1996) (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

With these standards in mind, we now address the petitioner's contention that the post-conviction court erred by finding that he failed to meet his burden of proving ineffective assistance of counsel. We consider seriatim the alleged instances of ineffective representation claimed by the petitioner.

## A. Loss of Photographs

The petitioner asserts that the photographs showing cuts on his face would have provided essential support to his claim that he had pulled the gun in self-defense after his wife had attacked him with a steak knife. He argues that trial counsel had a duty to preserve this exculpatory evidence, and that counsel's failure to preserve and present the photographs to the jury seriously prejudiced the outcome of his case, sufficient to establish his claim of ineffective assistance of counsel.

The chronology of these photographs is that they were given by the petitioner to trial counsel but he misplaced them, not finding them until after both the trial and the hearing on the post-conviction petition. Although they were made a late-filed exhibit to the record on appeal, they were not available to the post-conviction court for consideration. The two photographs show the petitioner with what appears to be two or three long scratch marks to the right side of his face.

At the trial, Anita Neal, a neighbor, testified as a prosecution witness. As for testimony about the petitioner's face, she said:

> Q. Did you see any injuries or anything like that?
>
> A. Well, I saw some spots on his shirt.
>
> Q. Okay, now spots, are you talking about – do you recall what color the shirt he had on was?
>
> A. I couldn't tell you what color – the shirt was white. I couldn't tell you what color the spots were, but I could tell there was some spots on his shirt.
>
> Q. Okay. Could it have been blood or something –
>
> A. It's possible.
>
> Q. Okay. Now did you see any injuries that he had?
>
> A. I couldn't tell.
>
> . . . .
>
> Q. All right, and you told Keith Price that evening that Mr. Russo had blood on his face; didn't you?
>
> A. He had blood on his – it would seem to be blood. I don't remember saying I seen his face. I honestly don't remember it.

Q. Well, didn't you tell – you talked to a detective?

A. Right.

Q. Would his name have been Detective Hullett?

A. I would recognize him if I see his face.

Q. But you talked to one detective or –

A. One. Well, I talked to two guys, but then he directed me to the guy that was in charge.

Q. And he interviewed you and wrote down what you were saying; is that correct?

A. Right.

Q. And that was done on March 23, about two in the morning; correct?

A. Right. Yes, sir.

Q. And you told him that you thought he had blood on his face; didn't you?

A. I can't remember that. I honestly can't. It's possible, but –

Q. Well, do you disagree with a report that I'm reading from that states that you said that from Detective Hullett?

A. I don't remember. I honestly don't remember.

Q. Well, your memory of what happened that evening, at 2:10 in the morning, would be better than it is now; right?

A. Right.

Q. And so if you told Detective Hullett then that Mr. Russo had blood on his face, that would have been from a present memory; wouldn't it?

A. Yes.

Q. And you would have probably been correct if you had told him that; wouldn't you?

A. Yes.

A defense witness, Gene Sims, testified that he was working at a BP station where the petitioner came after the shooting. He gave equivocal testimony as to whether the petitioner's face was scratched:

Q. Okay. Can you tell me what Mr. Russo's physical condition was when he came up that night?

A. He looked like he had been in a fight. His face was bleeding and stuff, and I think I might have even given him a towel or something. I don't now [sic]. I'm not for sure because that is not anything unusual for somebody to be in a fight.

Q. You say his face was cut up. Was there any other part of his body that was injured?

A. Seems like his arm or something. I'm not even positive. I think he had something wrong with one arm or something, you know.

Q. Was he bleeding when he got there?

A. His face was bleeding.

Q. Did he tell you how he received those cuts?

A. Yeah, after we talked a while, and I think, in fact, he said he shot his wife, you know.

Q. Okay. Did he tell you how he received the cuts though?

A. No, not really.

. . . .

Q. Did you tell him to go to the doctor or the hospital for those scratches?

A. No, sir.

-8-

Q. Do you know where those scratches came from?

A. No, sir.

Q. And, again, I believe you said you noticed the blood on his face originally, but didn't notice any scratches, but you believe you did see some scratches now?

A. Yeah.

Q. It's been about a year ago; right?

A. It's been, I don't know, it's been four or five months, or six months ago, I'm not even sure. Eighth and Jefferson at night, they come in every night over there beat up and cut up and if they ask me to call the police or something, I call them. If I think they are in danger, I call them, you know.

Q. Well, that is kind of my point is that the main thing you remember about that night was he came in and said he killed his wife; is that right?

A. No. He said he shot his wife.

Q. Okay. Shot his wife, and you found out later he had killed her?

A. Yeah.

Q. And you do recall him having some blood on him?

A. Yes, sir.

Q. But whether or not there were scratches, you don't remember; do you?

A. No. It was on his face and stuff, and it seems like he had something on his arm, the best I can remember, you know.

Q. Was that something blood?

A. There was a place on his arm.

Q. You don't know what that was?

A.   No, sir.

In its order denying post-conviction relief, the post-conviction court found that the petitioner had failed to show that the loss of the photographs prejudiced the outcome of his trial.  The court concluded that, although unable to offer the photographs to the jury, trial counsel had been able to offer corroboration of the petitioner's testimony that the victim had cut him several times across the face by eliciting testimony from Anita Neal who had observed the petitioner's condition immediately after the incident.  The post-conviction court found, therefore, that "although [trial counsel] lost the photographs of the petitioner, [trial counsel] elicited the testimony of Ms. Neal and the  petitioner so as to properly put the issue [of self-defense] before the jury."

The loss and then subsequent reappearance of these photographs have resulted in this issue being both procedurally and factually more complicated than might have been expected.  We will consider the procedural aspects of the matter.  The misplaced photographs were not located until after the hearing on the post-conviction petition, the ruling of the post-conviction court, and the filing of the notice of appeal.  However, upon the filing of the notice of appeal, the post-conviction court no longer had jurisdiction in this matter.  State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) ("The jurisdiction of the Court of Criminal Appeals attaches upon the filing of the notice of appeal and, therefore, the trial court loses jurisdiction.") (citing State v. Peak, 823 S.W.2d 228, 229 (Tenn. Crim. App. 1991)).  Tennessee Rule of Appellate Procedure 24(a) sets out what is contained in the record on appeal.  Rule 24(g) explains the limited circumstances in which the record can be supplemented:

> Limit on Authority to Add or Subtract from the Record. - Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

Tenn. R. App. P. 24(g).

At the time the photographs came into the record as late-filed exhibits, the post-conviction court no longer had jurisdiction in the matter and the photographs could not come into the record pursuant to Rule 24(g) because, although critical to the post-conviction court's ruling, they were not a basis for that ruling and not necessary to provide a "fair, accurate and complete account of what transpired" in the post-conviction court.  Thus, these photographs are not properly in the appellate record.

In the present posture, although we do not have the benefit of knowing whether the court's being able to view the photographs would have altered its findings, we are asked to consider this new evidence in reviewing the findings of the post-conviction court.  Had an appropriate request been made to this court, upon the photographs being located, to remand to the post-conviction court to consider them in its findings, this matter could have been remanded.

In light of all these circumstances, we remand to the post-conviction court for additional findings on this issue, namely, whether the injuries shown on the photographs and their unavailability for trial because of being misplaced by trial counsel established that counsel was ineffective and that it affected the outcome of the trial.

### B. Failure to Have Knife Tested

The petitioner next argues that trial counsel provided ineffective assistance by failing to have the steak knife tested for the presence of his blood. He asserts that had counsel done so, the test results could have provided further corroboration of his version of the incident, supporting his claim that his wife attacked him and that he shot her in self-defense. However, as the State points out, the petitioner's post-conviction counsel also had not had the knife tested for any evidence to support the petitioner's claims. Thus, the petitioner was unable to offer proof that had testing been performed, it would have revealed the presence of his blood on the knife. Without such evidence, he cannot meet the prejudice prong of the Strickland test. See Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S. Ct. 1335, 134 L. Ed. 2d 485 (1996) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, Hendricks cannot meet the prejudice prong of the Strickland test."); see also United States v. Ashimi, 932 F.2d 643, 649 (7th Cir. 1991) (stating that a petitioner cannot establish prejudice prong of ineffective assistance of counsel claim based on counsel's failure to investigate without showing "what the attorney would have discovered after 'adequate' investigation").

This claim is without merit.

### C. Failure to Object to Introduction of Photograph of Victim's Body

The petitioner argues that trial counsel was ineffective for failing to object to the State's introduction into evidence of a photograph of the victim's body, on the grounds that its prejudicial effect outweighed any probative value. The petitioner contends that because the medical examiner had already testified that the cause of death was a gunshot wound to the brain, the photograph was unnecessary cumulative evidence, which inflamed the jury against him and prejudiced his trial.

In considering this claim, the post-conviction court observed that the State had used the photograph both to corroborate the testimony of a police officer regarding the position of the victim's body, and to refute the petitioner's claim of self-defense by showing that there was no knife in the immediate vicinity of the victim's body. The court found that "the use of the photograph of the victim at trial was proper" and that "any objection [trial counsel] would have raised as to the admissibility of the photograph would have been overruled" by the trial court "contemporaneous to the objection." Thus, the post-conviction court concluded that trial counsel's failure to object to the photograph was not grounds for an ineffective assistance of counsel claim. The record supports the post-conviction court's findings in this matter.

### D. Lack of Preparation for Sentencing Hearing

The petitioner also argues that he was denied effective assistance of counsel by trial counsel's failure to adequately prepare for the sentencing hearing. The petitioner specifically complains of trial counsel's failure to introduce any witnesses to testify on his behalf at sentencing. The State responds by arguing that the petitioner has failed to show that he was prejudiced by trial counsel's alleged deficiency in this regard.

In denying relief on this ground, the post-conviction court found that the lack of testimony at the sentencing hearing had been a "logical, tactical decision." The court further found that "a great deal of the testimony that could have been used at the sentencing hearing had already been presented at the guilt phase of the trial," and thus, that "the information had already been placed before the jury for consideration." The post-conviction court observed that trial counsel had filed a request for four mitigating circumstances prior to trial, and that the trial court had included them in its charge to the jury. The court also noted that the State's sole aggravating factor, the petitioner's previous conviction of a violent felony, had been supported by a copy of the conviction and that the State had not offered any additional testimony at sentencing.

The record supports the post-conviction court's findings. At the post-conviction hearing, trial counsel explained why he had not offered witnesses at the sentencing hearing, testifying that he had discussed the possibility of a sentencing hearing with the petitioner prior to trial, and that the petitioner had agreed that his limited resources would be better spent in preparation for the guilt phase of the trial, rather than the sentencing hearing. Trial counsel stated that one of the factors behind their decision was that a life sentence on a first degree murder conviction carried a minimum sentence of fifty-one years, which, given the petitioner's age at the time of forty-three, would, for all practical considerations, be the equivalent of a life sentence without parole. Although the petitioner denied that trial counsel had ever discussed sentencing with him, he also denied that trial counsel had discussed any defense strategy with him at all. The post-conviction court accredited the testimony of trial counsel over that of the petitioner, finding that trial counsel had discussed the matter with the petitioner and had provided sound and logical reasons for not providing witnesses at sentencing. In matters of the credibility of witnesses, we defer to the judgment of the post-conviction court. See Taylor v. State, 875 S.W.2d 684, 686 (Tenn. Crim. App. 1993) (citing Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990)).

As support for his argument that trial counsel was ineffective for failing to present witnesses at sentencing, the petitioner asserts that he was prejudiced by trial counsel's failure to provide witnesses to testify regarding his alcoholism. The post-conviction court found, however, that trial counsel had already presented testimony in support of mitigating factors during the guilt phase of the trial. Therefore, it would have been unnecessary for trial counsel to repeat evidence at sentencing that he had already presented to the jury at trial. See Bates v. State, 973 S.W.2d 615, 633 (Tenn. Crim. App. 1997) (stating that it is "not ineffective to offer no proof in the sentencing phase of a death penalty trial when the mitigating evidence was already adequately presented to the jury at the guilt-innocence stage"). We, therefore, conclude that the petitioner has failed to demonstrate by clear and convincing evidence that counsel provided ineffective assistance at the sentencing phase of his trial.

### E.  Failure to Object to Testimony of Prior Bad Acts

In his post-conviction petition, the petitioner argued that he was prejudiced by the trial court's allowance of testimony of his prior bad acts, in violation of Tennessee Rule of Evidence 404. The post-conviction court ruled that it was not a proper issue for post-conviction relief. Although the petitioner did not frame it as an issue of ineffective assistance of counsel before the post-conviction court, the petitioner now argues on appeal that trial counsel provided ineffective assistance by failing to object to Carmella's testimony of previous abusive treatment of the victim by the petitioner. The State responds by arguing that the petitioner may not take one position at the post-conviction hearing, abandon it when it fails, and adopt a completely different position on appeal. The State contends that the issue is waived because the petitioner, raising the issue now for the first time, neglected to develop any proof in support of his argument at the post-conviction hearing, failed to cite to the record, and failed to cite any case law in support of his position. Additionally, we note that the trial transcript is not part of the record on appeal. Thus, the only information in the record as to the allegedly improperly admitted evidence are the claims made regarding it in the post-conviction petition.

We agree with the position of the State. The petitioner had the opportunity to assert in his post-conviction petition trial counsel's failure to object to the testimony as a ground for his claim of ineffective assistance of counsel, but failed to do so. A ground for post-conviction relief is waived "if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" Tenn. Code Ann. § 40-30-206(g) (1997). The petitioner has waived this issue by his failure to raise it before the post-conviction court. See Workman v. State, 868 S.W.2d 705, 709 (Tenn. Crim. App. 1993). In addition, the petitioner has waived the issue by failing to cite to the record and by failing to cite any case law in support of his position. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

### CONCLUSION

Since the two photographs showing scratches on the petitioner's face were not located by trial counsel until after the post-conviction court had made its findings in this matter, the findings do not consider the photographs themselves. In view of the facts of the case, the theories of both sides and the nature of the misplaced evidence, we remand so that the post-conviction court can have the benefit of the photographs in determining whether trial counsel was ineffective in misplacing the photographs so that they were not available for trial. As to the other issues raised on appeal, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE

-13-